OPHIA ERNEST RICHARDS, *Admr., etc. v.* HOPE CONSTRUCTION AND REFINING COMPANY

(No. 8911)

Submitted October 24, 1939. Decided November 28, 1939.

*Walter F. Ball,* and *James B. Smith,* for plaintiff in error.

*Kemble White, A. F. McCue* and *Harold M. Garrett,* for defendant in error.

KENNA, JUDGE:

This action for death by wrongful act was brought in the Circuit Court of Tyler County by the administrator of Ophia Ernest Richards, Jr., against the Hope Construction & Refining Company. After both the plaintiff's and defendant's testimony was introduced, pursuant to a peremptory instruction a verdict was rendered for the defendant. The plaintiff below prosecutes this writ based upon the judgment which followed.

Decedent was a boy ten years old whose body was found submerged in a sediment several inches deep in an oil tank owned and operated by the defendant company situate upon a leasehold held by it just east of Sistersville at about nine o'clock in the morning of June 16, 1937. The cause of death was thought by the coroner to be asphyxiation. Young Richards, together with a companion, had been missed since the previous afternoon, and a search for them had extended through the night. The tank in which the two bodies were found was constructed for the purpose of storing oil produced from the defendant company's wells in the immediate vicinity. It, together with a similar tank six or eight feet from it, was built seventy-eight feet from the highway upon an excavated flat in a short but rather abrupt hollow lying between Sistersville and Route Eighteen. The two tanks were within twenty-five feet of a small rill, and there was woodland on the upper side between them and the flat ground above. Young Richards lived with his parents in one of the houses upon the flat ground above the tanks, the nearest of which was within approximately three hundred feet of the tanks in the hollow and along with two other houses stood between the tanks and the Richards house. The flat land above the tanks was approached by another means of access, and not up the hollow which apparently was too narrow, rough and steep to be used for that purpose. The only two uses to which the land in this hollow was put as disclosed by this record was the keeping of hogs in two sties within a few feet of the

tanks, and the storage of oil in the tanks by the defendant and the removal and transportation of it by the Eureka Pipe Line Company. There is a slight conflict in the testimony as to the location of the pathway used to reach the tanks and the sties, but apparently it lay at the bottom of the hollow and between the two tanks and the rivulet. The oil tanks were approximately nine feet six inches high and eight feet nine inches in diameter. They were made of steel which covered them, and the top nearest the hill of the tank in which the boys were found was approximately ten feet from the ground on the same level. The defendant's employees kept a piece of twelve-by-two from the ground level to the top of that tank, between which and the lower tank there was a walkway. In the top of each tank there was a fifteen-inch circular "hatch" enclosed within a cast-iron frame and covered by a heavy cast-iron lid connected with and operated by an iron lever passing over it and hinged to the frame. The free end of this lever was pierced and when down with the lid of the hatch closed, a hasp riveted to the frame could be passed over it and beyond its "eye" so that the lid could be locked down with a padlock. This was the defendant company's method of operation until, for economical reasons, the use of padlocks was abandoned and instead a light piece of wire was run through the eye of the lever and fastened with a lead seal. This was the practice pursued by the defendant in June, 1937.

The defendant's gaugers used the piece of two-by-twelve to reach the hatches on the two tanks for the purpose of determining the amount of oil in each in order to determine when the pipe-line company should be notified to empty the full tank.

The theory under which the plaintiff evidently sought recovery in the trial court was that crude oil exudes natural gas and noxious vapors which fact made the use of the tanks the operation of a dangerous instrumentality and that under the rule laid down by this Court in the case of *Adams* v. *Virginian Gasoline & Oil Co.,* 109 W. Va. 631, 156 S. E. 63, the defendant company should have an-

ticipated the danger to and presence of plaintiff's decedent, although an infant trespasser. The case of *Parsons v. Appalachian Electric Power Co.*, 115 W. Va. 450, 176 S. E. 862, 100 A. L. R. 615, is relied upon as holding that one operating a dangerous instrumentality is to be charged with knowledge of all circumstances which a high degree of care would have brought to their attention, and that it is therefore unnecessary to prove that Hope Construction & Refining Company had actual knowledge of the habitual presence of children around its two tanks.

The defendant company took the position in the trial court (a) that the two tanks were not dangerous instrumentalities; (b) that being so, their duty was fully discharged by the use and exercise of ordinary care, and that it constituted error for the trial court to refuse to permit the defendant company to establish the usage and custom of others engaged in similar businesses in that vicinity, and to thus show that the defendant company was exercising care far beyond the ordinary.

The *Adams* case involved a known leaking gasoline pipe running under a stock pen, so that immediately preceding the death of plaintiff's decedent the pipe was being uncovered in an effort to locate the leak. When several gallons of gasoline had been removed from the ditch by onlookers with the knowledge of the defendant's foreman, the defendant's men ceased to work without repairing the leak or placing a guard over the ditch. Plaintiff's decedent, a child of seven, thereafter, in an effort to get gasoline out of the ditch, was asphyxiated. A judgment for the plaintiff was affirmed.

We do not think that the *Adams* case applies for the reason that the knowledge of the presence of persons in a place of danger is not here shown. Neither do we think that the *Parsons* case is in point because it is not shown that the defendant's tanks, constructed in the way and for the purpose that they were, were to be recognized as dangerous instrumentalities.

Unfortunately, there seems not to be any well established principle governing cases of this nature so that at

the present time no settled line of demarcation can be pointed out. In this state, the principles upon which the doctrine of "attractive nuisances" rested seem still to underlie the "dangerous instrumentality" doctrine. For a general review of both doctrines so far as they affect the owners of wells, cisterns, and things of like nature, see *Shawnee* v. *Cheek*, 41 Okla. 227, 137 Pac. 724, 51 L. R. A. (N. S.) 672, Ann. Cas. 1915C, 290 and note; *Doyle* v. *Chattanooga*, 128 Tenn. 433, 161 S. W. 997, Ann. Cas. 1915C, 283 and note; as well as the note to be found in 53 A. L. R. 1344 and prior annotations to which reference is there found.

We cannot, after a careful examination of this record, find adequate evidence to sustain a *prima facie* showing entitling plaintiff to recover under the dangerous instrumentality doctrine. Certainly there is no evidence that would justify a finding that the defendant either knew of, or had reason to anticipate, the constant or habitual presence of small boys on the top of its tanks, nor that, if so, that fact would constitute a serious danger that they would be asphyxiated. It is not shown that persons other than those whose duties required them to, including both children and adults, at any time entered the defendant's tanks for any purpose, save in the instant case. The *Adams* case and the doctrine annunciated therein, we think, is therefore not applicable here. This is particularly so when the plaintiff was treated by the trial judge as having made out a *prima facie* case, and the peremptory instruction not given until the defendant had concluded its proof with testimony that clearly preponderated. As discussing the effect of a plain preponderance of the evidence, see *Bank of Greenville* v. *S. T. Lowry & Co.*, 79 W. Va. 10, 90 S. E. 390; *Bank of White Sulphur Springs* v. *Lynch*, 93 W. Va. 382, 116 S. E. 685.

For the reasons stated it is not necessary to discuss the question of contributory negligence nor the contention that, even considering the adventurous spirit of boyhood,

the plaintiff's decedent must have realized that he was unnecessarily placing himself in a hazardous position.

The judgment of the Circuit Court of Tyler County will be affirmed.

*Affirmed.*