CARLTON MAGGARD *v.* APPALACHIAN ELECTRIC POWER COMPANY

(No. 7108)

Submitted January 27, 1932.    Decided February 2, 1932.

*File, Goldsmith & Scherer,* for plaintiff in error.
*Ben H. Ashworth* and *Clay S. Crouse,* for defendant in error.

LIVELY, JUDGE:

Appalachian Electric Power Company (hereinafter called power Company) prosecutes error to a verdict and judgment against it in favor of Carlton Maggard for personal injuries received by him cause by contact with one of its high tension wires.

On October 15, 1930, Maggard was working for a construction company as fireman on a steam shovel which moved about on caterpillars on its own power. The shovel was engaged in excavating a passageway for a state highway under the Piney Branch of the C. & O. Ry. Company on Piney River at the junction of Beaver Creek with Piney River in Raleigh county. The fill, or embankment, on which the railroad was laid was about 20 feet high and the shovel was located at the foot of the fill. The shovel would bite into the fill and then carry the dirt by means of the boom and deposit it between the railroad and the river nearby, making a new fill of about three feet in height on the bed of the new highway. A coffer dam near the river was being constructed for a new bridge, and the shovel at the time of the accident was in use to clean out the coffer dam by the use of a clamshell form of shovel, and it became necessary to disconnect the clamshell from the end of the wire cable which extended from the drum along the boom through a sheave wheel at its end and thence to the clamshell (or whatever other form of shovel or attachment was being used at the end of the cable.) The clamshell was rested on the ground and in order to detach it from the cable, it became the duty of Maggard to climb the boom, which, at that time, was almost perpendicular, throw the cable from the sheave wheel and give the proper slack to the cable. The end of the boom was brought to rest high in the air and very close (probably two feet) to the wires of the Power Company carrying 2300 volts, and in throwing the cable from the sheave wheel, Maggard or the cable came in contact with the high voltage and he was severely burned. He says his neck came in contact with the wires. These wires had been there for several years before the construction of the highway began, by right of contract

with the landowner. At the time the highway construction began they were supported by steel poles and about 29 feet above the ground and ran almost parallel with, and about 40 feet from, the railroad, the poles being set near the foot of the railroad fill or embankment. The new highway crossed under these wires at an angle of about 25 degrees. The land between the railroad and river was low and swampy, and not used for any purpose by anyone else, and no one lived near there. The power line and its equipment was of standard material and construction. The landowner had given verbal permission for the construction of the highway, but there had been no permission or right given by the Power Company for the road over its easement. No protest against its construction from the Power Company appears to have been made. One of the steel poles and a guy wire supporting it appears to have been located at the foot of the railroad embankment where the steam shovel was working, and about 15 days before the accident the Construction Company requested the Power Company by phone message to come down from Beckley and move the wires, as they were in the way. Defendant claims that the request was to move the guy wire only. The next day the Power Company took down the steel pole, and guy wire (which had been damaged by the construction) and moved the location of the pole about six feet further from the construction and set up a cedar pole forty feet in length with five feet in the ground and on the rock shale of the river bed, and placed the high tension wires on a crossbeam about eight inches from the top, thus raising the wires to approximately 34 feet above the ground. There is some conflict as to the height of the wires. Plaintiff's witnesses estimate the height at from 20 to 25 feet, while the Power Company, by actual measurement, showed the height to be 34 feet. Plaintiff's testimony is that the fill being constructed was three feet high and it is quite apparent that at best the wires were approximately 32 feet above that fill. Estimates must give way to actual measurement, and it may be taken as a proven fact that the wires were at least 32 feet above the ground. The regulation of the state road commission (which was building the road by contract with the Con-

struction Company) requires such wires to be 22 feet above the highway. The foreman of the road construction gave no suggestions as to the location of the new pole or height of the wires and made no complaint then or afterwards about either. Fifteen days later, the accident occurred as above detailed.

The declaration charges defendant with the duty of maintaining its high tension wires so that they would not come in contact with the boom or anyone thereon in the discharge of his duties; that it was defendant's duty to inform plaintiff that the wires were heavily charged with electricity; and that it was defendant's duty to keep the wires at that place properly insulated; all of which duties defendant did not discharge, which non-performance of duties owing to plaintiff caused his injuries.

Plaintiff was over 21 years old, and had been at work on the steam shovel for about six weeks, and prior to that time had worked in a steel mill in Ohio for 18 months, and prior to that time he had worked on a farm.

Plaintiff does not testify about the wires except to say they were there, and when he climbed the boom and threw the cable from the sheave wheel he came in contact with them or one of them and was burned. He does not say that he knew they were electric wires or did not know. The foreman of the road construction said he (the foreman) did not know they were high tension wires. He knew they were electric wires, for he called the Electric Power Company to move them.

The errors assigned are to the giving and refusing instructions, and the refusal to set aside the verdict as contrary to the law and evidence. The Power Company asserts that it was guilty of no negligence in the construction and maintenance of its lines at the place where plaintiff was injured; that no duty was incumbent upon it to insulate its wires at that point; and that plaintiff's own negligence bars him from recovery.

Plaintiff says (1) that defendant was required to use such care and prudence as would prevent injury to him because he had a right to be on the end of the boom in the prosecution of his work; that it was defendant's duty to insulate

the wires while the road construction was in progress; that because its lines were there before the road work began, and because the road authorities had not acquired right of way over defendant's easement, does not relieve defendant from insulating its wires and using care and prudence to prevent injury to the road workmen; (2) that it was not contributory negligence in plaintiff to come in contact with the wires, unless defendant showed, which it has not done, that plaintiff knew the wires were dangerously charged with electricity and not insulated, the burden being on defendant to show that fact.

Plaintiff argues that defendant should have anticipated that he might climb the boom and come in contact with the wires, and therefore its duty was to put them out of reach or insulate them. To sustain that contention, they rely upon *Thornburg* v. *Railroad Co.*, 65 W. Va. 379, 64 S. E. 358, where defendant maintained a high power wire on a bridge within reach of a fourteen-year old boy who was walking on a sidewall of the bridge three feet high, where children were accustomed to walk on the capping of that wall and had done so for years until it had become worn with their feet. The boy, while walking on the wall, caught hold of the wire and was killed. This Court affirmed judgment for plaintiff, saying that it was the duty of electric companies to use very great care to keep the insulation of its dangerous wires perfect at places where people have the right to go for work, for business or for pleasure; citing *Thomas* v. *Wheeling Elec. Co.*, 54 W. Va. 395, 46 S. E. 217, where a workman on a balcony came in contact with a wire attached to a bracket on the wall. Illustrative of that character of cases, which are numerous, is the Mississippi case of *Temple* v. *Elec. Co.*, 89 (Miss.) 1, 42 So. 874, 11 L. R. A. (N. S.) 449, 119 A. M. St. Rep. 698, 10 An. Cos. 924, where a boy climbed a tree and came in contact with an uninsulated wire, the court saying that defendant was bound to take notice of the immemorial habit of small boys to climb trees. *Humphreys* v. *Coal Co.*, 73 W. Va. 495, 80 S. E. 803, L. R. A. 1916C, 1270, was where an uninsulated wire was used in a coal mine at a place where any employee therein might come in contact with it in dis-

charge of his duties. Somewhat similar to *Thornburg* v. *Railroad Co., supra,* is *Love* v. *Virginia Power Co.*, 86 W. Va. 393, 103 S. E. 352, where defendant permitted a pile of slate to remain within four feet of its high power lines for over two years, on which children of the miners in the vicinity were accustomed to play. One of the children, while so playing, was electrocuted, and defendant was held liable on the well settled principle running through all these cases that where a company maintains high power transmission wires in a place to which it knows, or should anticipate that others may lawfully resort thereto for business, pleasure, curiosity or the like, in such manner as to expose them to danger of contact therewith by accident or inadvertence, it is the duty of the person or authority maintaining such wires to take adequate precaution for their safety by insulation or other adequate means. *Fisher* v. *Coal Co.*, 86 W. Va. 460, 103 S. E. 459, is in the same class. There, plaintiff on horseback was traveling over a public road under construction and not opened to the public (but which had been for some time used by the public because the old road had washed out), was injured by contact with the electric wire which had sagged down over the road, and it was held to be a fact for the jury whether defendant, under those circumstances, was bound to anticipate travel on the road before formal opening to public use, and provide against injury to the travelers. Text writers and decisions from other states say, quite generally, that one who maintains high voltage electric line is bound to exercise the care and prudence necessary to prevent injury at places where others have the right to go either for business, work or pleasure. The crux of this case is whether, under the facts and circumstances here set out at length, defendant was bound to anticipate that the end of the boom would be negligently brought to rest dangerously near the wires, and that plaintiff would be sent to the apparent danger of electrocution. The law does not make an electric company an insurer against injury from its high tension wires. If so, it would be required to insulate them in uninhabited places where persons might go in pursuit of pleasure, or other purpose. If such was the law the occupants of an air-

plane could recover if, perchance, the plane came in contact with such wires in lawfully flying on its journey and the occupants injured by the electric current. The question of liability is, as above stated, should the owner of this deadly and silent agency anticipate that others in lawful pursuit of business, work or pleasure would be injured by its electrically charged wires? Here, defendant in compliance with the request of the contractor of the construction had raised the wires to an unusual height and no further complaint was voiced. The request to move the wires out of the way of the construction was done to the apparent satisfaction of the construction company. The contractor was apparently satisfied that danger was obviated, and defendant could not anticipate that the Construction Company would grossly neglect reasonable precautions for the safety of its employees. There was ample space for the safe operation of the steam shovel and its boom in the 32 feet of space between the ground and the wires; and there was no necessity in elevating the boom to the wires in order to release the clamshell from the cable. It was gross negligence on the part of the contractor to do so, and then send its employee into great danger. We think it unreasonable to hold defendant responsible for the gross negligence of the contractor, or to hold that defendant could reasonably anticipate that the contractor would conduct his operations other than in a prudent and reasonable manner. The proximate cause of plaintiff's injury was the negligent act of the contractor. Of course, if the wires had not been there no injury would have resulted; but it must be remembered that they were there of prior right. In the *Fisher* case (86 W. Va. 460) 103 S. E. 359, it was held to be a jury question whether defendant was bound to anticipate public travel over a road under construction and which had not been opened for public use, and to take reasonable precautions against injury to travelers thereon. There, the new road under construction over which the uninsulated wire had sagged down dangerously near the surface( a workman had attempted to raise it by a prop) had not been opened to public use, but on account of the old road being allegedly impassable the public had been for some time actually traveling the new road with-

out the knowledge of defendant as claimed by it. The court held that it was for the jury to say under these circumstances whether defendant was bound to anticipate probability of public travel on the unopened road, and take reasonable precaution to prevent injury to travelers from the wires. That case is quite different from the instant case. Defendant had complied with the Construction Company's request to the apparent satisfaction of the latter, and it cannot be said that defendant should or could reasonably anticipate that the contractor would conduct its work other than in a safe and prudent way to prevent injury to its employees. To hold that defendant should have anticipated the injury under this evidence would practically make defendant an insurer against injuries from its wires. It is quite generally held that those who transmit electricity, a dangerous force, are required to exercise a high degree of care in constructing and operating its lines commensurate with the dangers to be apprehended from contact therewith, or the escape of current therefrom; but they are not insurers against accidents or injuries. *Hoppe* v. *City of Winona,* (Minn.) 33 L. R. A. (N. S.) 449, Anno. Cas. 1912-A, 247. And it is quite generally held that where such lines are on, or dangerously near, bridges, buildings and the like where workmen are reasonably expected to go, the wires must be insulated or other adequate means used for protection. *Runyan* v. *Kan. Water & Light Co.,* 68 W. Va. 609, 71 S. E. 259, 35 L. R. A. (N. S.) 430. Likewise, where it may be reasonably anticipated that children will go. *Thornburg* v. *Railroad Co.,* 65 W. Va. 379, 64 S. E. 358 But where the wires are at a height in the air at which they would not come in contact or of dangerous proximity to persons not reasonably expected to come near them, the owner or operator of the lines is not chargeable with negligence where some one, doing an act which he had no reason to expect or anticipate, suffers an injury which might not have been suffered if the wires had been at a higher elevation. *Braun* v. *Buffalo Gen. Elec. Co.,* 200 N. Y. 484, 94 N. E. 206, 34 L. R. A. (N. S.) 1089, A. M. St. Rep. 645, 21 Ann. Cas. 370, and cases there cited. So, we come back to the crux of this case hereinbefore stated. *Bunten* v. *Eastern Minn. Power Co.*

(Minn.) 228, N. W. 332, cited by defendant, is in point. There the uninsulated wires were maintained across a spur of a railway at a height of 25½ feet, ample for the protecttion of trainmen on top of box cars. A road building machine had been loaded on a flat car without removal of a stationary boom extending 20 feet up in the air. The car was then negligently moved near the overhanging wires bringing the boom close to them, and plaintiff, with others, proceeded to remove the boom. Plaintiff went to the top of the boom to disentangle a cable from the pulley, came in contact with the wires and was injured. It was argued that it was a question for the jury to determine whether defendant should have anticipated that such machinery might be transported, the dismantling of which after being loaded would endanger the safety of the workmen. The court held it was not a jury question and that defendant had no reason to anticipate that any one would be injured at that height above the railroad spur. *Reiland* v. *Wisconsin Valley Elec. Co.* (1930) 202 Wis. 499, 233 N. W. 91, is somewhat similar to the instant case in its main features. There defendant was called upon by a road contractor to move its wires which hampered road construction and complied with that request and placed the wires higher, to the apparent satisfaction of the contractor. Plaintiff's decedent, 26 years old, was operating the steam shovel, went up on the ladder of the boom and attempted to tie up some telephone wires which had sagged in the way of the boom, and in doing so came in contact with the uninsulated wires and was electrocuted. The court held that there was no negligence on the part of defendant, and that if there had been, plaintiff's decedent was guilty of contributory negligence barring recovery. There are other cases of like import referred to in the two cases last cited, but space forbids more than a reference to them.

On the whole, we have come to the conclusion that defendant could not reasonably anticipate the injury to plaintiff and no legal duty rested upon it to insulate its wires at that place or raise them higher. There being no negligence attributable to defendant, the question of plaintiff's contribu-

tory negligence becomes unimportant. Contributory negligence of a plaintiff implies that there was negligence on the part of defendant.

*Judgment reversed; verdict set aside; new trial awarded.*