E. V. Parsons, *Admr., etc. v.* Appalachian Electric Power Company

(No. 7825)

Submitted October 9, 1934. Decided October 23, 1934.

*N. D. Waugh* and *Mark. T. Valentine,* for plaintiff in error.

*Chas. L. Estep* and *John Chafin,* for defendant in error.

KENNA, JUDGE:

Densil Duty, a boy of eleven years of age and plaintiff's decedent, lost his life on the 27th day of September, 1932, by coming in contact with a high tension electric wire carrying 6600 volts owned and maintained by the defendant, Appalachian Electric Power Company, and stretched across a public bridge over the Guyandotte River at Chapmansville in Logan County. The bridge carried both vehicular and foot traffic and was in three spans with a steel superstructure. The largest span was in the middle, a smaller span was on the Chapmansville side of the bridge, and the smallest span, and the one on which the boy was injured, was at the end of the bridge away from Chapmansville. The electric line was stretched on wooden cross-arms that extended out from the superstructure or framework of the bridge, on the outside, between seventeen and eighteen feet above the bridge's floor. These arms carried the wire, at some

points seventeen inches from the steel superstructure of the bridge, and at the point where the boy came in contact with the wire, a distance of 26 inches from the superstructure. The testimony shows that plaintiff's decedent resided with his parents on the side of the river opposite Chapmansville, and that he, together with some thirty or forty other children, was accustomed to cross the bridge several times daily in going to school in Chapmansville. On the day that he came in contact with the wire, he, together with one or two other boys, climbed into the superstructure of the bridge. The Duty boy was climbing a vertical beam or truss of the bridge, the dimensions of which do not directly appear in the evidence, but which was made of two flat and solid steel uprights connected at the edges by diagonal lattice work of steel strips which formed a footing in the triangular opening between the steel strips and side pieces that it was possible to use in climbing it. It is inferable from the testimony that the Duty boy was climbing the beam by putting his arms partially around it as he ascended and that when he reached the approximate level of the wire, he either slipped or fell against the wire or put out his hand and touched it in his climbing. At any rate, he made contact with the wire by touching it with his left hand.

There is direct testimony that on two or three occasions the boy had been warned of the danger of climbing the superstructure of the bridge, both on account of the danger inherent in that sort of play and on account of the danger that existed from the presence of the electric wires. There is evidence also that children had, for a number of years, been accustomed to climbing onto the superstructure of the bridge, and that on several specific occasions witnesses had seen boys playing in the superstructure of the bridge.

This action was brought in the circuit court of Logan County, tried to a jury, a verdict in favor of the plaintiff in the sum of $7,000.00 was rendered, and from the judgment pronounced on that verdict, this writ of error is prosecuted. There are but two assignments:

First, that the record does not disclose primary negligence on the part of the defendant.

Second, that the record does disclose contributory negligence on the part of plaintiff's decedent, and that in either case, the trial court should have directed a verdict in favor of the defendant.

A point is raised as to an instruction given on behalf of the plaintiff, which told the jury in effect that if the defendant knew, or by the exercise of reasonable care should have discovered, that children were accustomed to playing in the superstructure of the bridge, that it thereupon became its duty to anticipate that they might do so and to either safely insulate or remove their wires from danger of coming in contact with children so playing. This assignment, however, is interwoven with the assignment predicated upon the lack of negligence on the part of the defendant, and the proposition of law involved in the instruction will be discussed in connection with that assignment of error.

We are of the opinion that the case cannot be reversed upon any of the assigned grounds of error.

As to the matter of the defendant's primary negligence, we do not believe that it is necessary to decide whether the case falls within that class of cases wherein by reason of the circumstances shown, defendant electric company must have anticipated that persons would go about their wires, whether or not it is shown that any persons have actually gone there. In the case of *Runyan* v. *Water & Light Co.*, 68 W. Va. 609, 71 S. E. 259, 35 L. R. A. (N. S.) 430, for example, it was held that an electric company must anticipate that workmen, such as painters, would be required to go into the superstructure of a large bridge. The question, then, would perhaps arise, whether any person outside the one single class whose presence at the place of injury must be anticipated, can recover on the same showing. In other words, because the company must anticipate the presence of workmen and guard against injury to them, does it owe the same duty to any-

one who might lawfully be at the same place? We do not believe that it is necessary in this case for us to decide that point. Here, there is ample showing in the record that children did, from time to time, go into the superstructure of the bridge. Indeed, some of the witnesses stated the matter so strongly that it might reasonably be inferred that it was a habit or custom for boys to climb about the bridge, and other circumstances of the case, particularly the showing that a large group of school children crossed the bridge several times daily during the school term, are background for this testimony. It is true that it is not shown that the company had actual knowledge of the fact that children were accustomed to play in the superstructure of the bridge and near its dangerous wires, but we think that actual knowledge is not the test. The alertness (degree of care) required of a company furnishing electricity to prevent injury from exposure to the deadly agency that it handles, is measured by the danger itself. It must exercise this alertness not only under the conditions that exist when its wires are placed and of which it has actual knowledge, but it must exercise it in the light of changing conditions of which it should have had knowledge. The case of *Love* v. *Power Co.,* 86 W. Va. 393, 103 S. E. 352, is authority in this state for this proposition. Therefore, since the electric company in this case was chargeable with knowledge that children were likely to play or climb into the superstructure of the bridge, it must anticipate that they would come there, and must exercise a high degree of care to prevent them from being injured by the current carried in its wires. In this case, the dangerous wire was within 26 inches of a place that an active boy might climb. At other points, it was as close as 17 inches. Either distance is little more than a child's arm length. While it is shown that, for the voltage carried, insulation could not be provided that would furnish protection on contact, it at the same time appears conclusively that appropriate means could have been adopted to carry the wires far enough from the superstructure to keep persons who were there from coming in contact with them.

We think it was the duty of the company to adopt these means, and that its failure to do so under the circumstances constitutes negligence. As far as the insulation is concerned, it might well be argued that its presence on a high voltage wire furnishes a false assurance of safety. Among the cases from other jurisdictions that have been carefully examined on this point are the following: *Johnson* v. *Branford Lighting & Water Co.,* 75 Conn. 548, 54 Atl. 303; *Pine Bluff* v. *Bobbitt,* 168 Ark. 1019, 273 S. W. 1; *Znidersich* v. *Minnesota Utilities Co.,* 155 Minn. 293, 193 N. W. 449; *McKiddy* v. *Des Moines Electric Co.,* (Iowa) 206 N. W. 815. See also the cases annotated in 17 A. L. R. 833, 41 A. L. R. 1337 and 49 A. L. R. 1054.

In our opinion, there is little difficulty on the question of contributory negligence. The presumptions are against its existence in the case of a boy only eleven years of age. It is perfectly true that the defendant introduced proof tending to show that it might exist in this case. Defendant had a fair chance with this proof before the jury and lost. We think that makes an end of the matter.

Among other cases relied upon by counsel for plaintiff in error on the question of contributory negligence is that of *Austin* v. *Public Service Company,* 299 Ill. 112, 132 N. E. 458. That was the case of a boy just under fourteen years of age who was killed by walking upon the beam of a bridge 21 feet six inches above the floor, at a point where the wires of the defendant had been permitted to sag from their support to within four feet or a little more above the beam on which the boy was walking. The court in that case refused to hold that the defendant was not guilty of negligence, but held that the boy himself, as a matter of law, was chargeable with negligence, the opinion stating: "A boy fourteen years old, who has been raised in a city, knows as well as a man that insulated wires carried upon poles are likely to be charged with a deadly load of electricity and that it is not safe to touch them or go where he is likely to fall into them." The harshness of this utterance, we believe,

does not conform to the rule established by many West Virginia decisions, to which it is not necessary to refer.

Another case relied upon by counsel for plaintiff in error is that of *Graves* v. *Washington Water Power Co.*, 44 Wash. 675, 87 P. 956. In that case, a boy was electrocuted while climbing for a bird's nest in the pier of a bridge near the defendant's power house, and near which its wires had been strung. The boy was fifteen years of age, and the court seems to have reached its conclusion by applying to him the law with reference to trespassers, although the injury did not occur upon the premises of the company. The court there said: "If, under given circumstances, a person in maintaining a dangerous agency upon his own premises would not be liable for injuries therefrom to a trespasser upon said premises, and would not be holden to anticipate the presence of such trespasser, we do not see why he should be holden to foresee the presence of a trespasser upon adjoining property, or why he should be under obligation to guard against the possible presence of one trespassing upon the adjoining premises so near as to be injured by said dangerous agency." The court then goes on to reason that the "turntable" or "attractive nuisance" doctrine is not applicable to the case under consideration. Without going into detail and citing cases readily accessible for the purpose, in addition to drawing attention to the fact that the age of the boy is different and that the case was not decided on the question of contributory negligence, but upon the question of defendant's primary negligence, we must simply say that we believe the case is badly reasoned, and that we cannot follow it.

Another case relied upon by the plaintiff in error is that of *State ex rel. Kansas City Light & Power Co.* v. *Trimble*, (Mo.) 49 A. L. R. 1047, 285 S. W. 455. It is true that in that case a boy of more than fourteen years of age was held guilty of contributory negligence because he climbed a pole for the purpose of walking on a cable that was strung on the pole in order to "show off" before some girls that were present. When he reached the point where the cable was, he was repeatedly warned by com-

panions, told of the presence of the live wires, and admonished to come down, a boy who was present threatening to knock him off with a rock if he didn't do so. Considering the difference in the age of the boys involved and the marked difference in the circumstances, we do not believe that this case furnishes a guide here.

Defendant urges that contributory negligence results as a matter of law because it says that this boy was on the bridge in violation of a statute. Code, 17-19-3. This section is obviously a traffic statute and we do not see how a boy climbing in the superstructure of a bridge can be brought within its terms. However, in this particular case, we do not regard the violation of this statute as a relevant circumstance, for the reason that it was not intended for the protection of the defendant or of persons in the situation of the defendant. In order for a statute to apply and to be a protection to persons seeking to avail themselves of its terms, those invoking it must be within the class of persons that it is intended to embrace. *Steiner* v. *Muldrew,* 114 W .Va. 801, 173 S. E. 891.

For the reasons stated, the judgment of the circuit court of Logan County is affirmed.

*Affirmed.*