HOWARD MUSSER, *Administrator, v.* NORFOLK AND WESTERN
RAILWAY COMPANY

(No. 9062)

Submitted April 16, 1940. Decided June 4, 1940.

*Crockett & Tutwiler*, for plaintiff in error.
*Ashworth & Sanders* and *Lilly & Lilly*, for defendant in error.

RILEY, PRESIDENT:

Howard Musser, administrator of the estate of William Monroe Musser, deceased, brought this action of trespass on the case in the Circuit Court of McDowell County against the Norfolk and Western Railway Company for the alleged wrongful death of plaintiff's decedent. This writ of error is prosecuted to the action of the trial court in setting aside a directed verdict in defendant's favor.

Defendant operates an electrified railroad, served by an overhead catenary wire system, consisting of messenger, auxiliary and trolley wires, the first being topmost, and all three uninsulated and carrying eleven thousand volts. Decedent, a boy of thirteen years, received injuries on September 17, 1938, from which he died on October 8, 1938. The accident occurred at the point where defendant's railroad is crossed by a public bridge—a part of the highway connecting Welch and the Town of Hemphill.

In view of the fact that the injuries were the result of contact made with the messenger wire, by means of a chain and wire, which decedent dangled from the bridge above, a few of the physical features need be recited.

The bridge, which is in sight of and about one thousand feet from decedent's home, is supported by horizontal steel girders fifty-five and one-half inches in height, twenty-seven inches of which rise above the floor, thus forming a barrier along each side of the roadway, and on top of each of these girders is a board fence thirty-nine and one-half inches in height, making the top of the latter sixty-six and one-half inches above the floor of the bridge. On the left side of the roadway, going from Welch to Hemphill, and for the full length of the bridge, was a "water box", placed there to protect a water main. The top of this box was reached by a step of one foot, two inches, and a second step of ten inches. Pedestrians used this water box when vehicles passed on the bridge. The height of the trolley wire above the rails is nineteen feet, four inches; the distance from the trolley wire to the top of the messenger wire, fifteen inches; and the distance

from the messenger wire to the bottom of the steel girders (bridge) eighteen and one-half inches. Thus by simple addition, it appears that the distance from the messenger wire to the top of the wooden fence is one hundred thirteen and one-half inches, or nine feet, five and one-half inches (eighteen and one-half inches plus fifty-five and one-half inches plus thirty-nine and one-half inches).

On the occasion of the injury, decedent, together with two boy companions, aged respectively ten and eleven years, was crossing the bridge. Decedent, who had with him a chain with a short wire at the end thereof, was seen by his companions and other witnesses, to stand on the water box, lean over the wooden fence and swing the chain in an effort to bring it in contact with one of the wires. As he did so, the chain touch the messenger wire. Immediately a loud noise followed, so loud indeed that decedent's father heard it at his home and thought it was a blow-out.

There is evidence to the effect that children were seen frequently to play on the water box; that it was necessary for pedestrians to step on the box whenever two cars undertook to pass on the bridge; that decedent was warned by his companions not to swing the chain against the wires; and that decedent was accustomed to use the bridge on his way to and from school.

The exact length of the chain and wire is not ascertained from the evidence. However, the fact that the messenger wire was nine feet, five and one-half inches from the top of the wooden fence, and that decedent was a boy of thirteen and small for his years, would clearly indicate that the chain and wire were not much less than the distance between the fence top and the messenger wire. In fact, one of defendant's witnesses testified without contradiction that after the injuries he found a burnt place on the messenger wire which was five feet, eleven inches from the girder and eleven feet, four inches from the top of the fence. This witness testified that if decedent's arm had been a foot, eight inches long, a fact which was ascertained by comparison with the arm of one of his boy com-

panions, the chain and wire were at least nine feet, ten inches.

The record discloses several important facts which bear directly upon the question of whether defendant was guilty of primary negligence: (1) the eleven thousand voltage was standard for the kind of transportation in which defendant was engaged; (2) it is not practical to insulate extremely high voltage wires, especially those subject to outside conditions; (3) defendant's wires at the place where they ran under the bridge were substantially lower than at other parts of defendant's railway system; and (4) defendant's railroad system at the place in question had been electrified since 1923, and the water box had been so located for a number of years without injury to anyone.

In appraising the trial court's action, we are governed by the rule that a court should direct a verdict in a party's favor, if the evidence is such that if the jury had brought in a verdict in the other party's favor it would not be allowed to stand. *Wood, Exec.* v. *Shrewsbury,* 117 W. Va. 569, 186 S. E. 294; *Linville* v. *Chesapeake & Ohio Ry. Co.,* 115 W. Va. 610, 177 S. E. 538; *Martin* v. *Appalachian Electric Power Co.,* 109 W. Va. 129, 153 S. E. 245; *Barr* v. *Knotts,* 101 W. Va. 440, 133 S. E. 114; *Bank of White Sulphur Springs* v. *Lynch,* 93 W. Va. 382, 116 S. E. 685; *Ketterman* v. *Dry Fork Railroad Co.,* 48 W. Va. 606, 37 S. E. 683.

The record has been studied for the purpose of determining whether or not it contains such a state of facts that a jury could find that the defendant was guilty of primary negligence. If not so guilty, that of itself disposes of all other questions in the case. We are well aware that electricity in high voltage is inherently dangerous to those coming in close contact with it, and where a person maintains wires and equipment containing high voltage in electricity there is a duty to use every reasonable effort to prevent injury. This rule, however, is circumscribed by another rule which we think applicable to this case. Even if the instrumentality is dangerous, care need be taken only in a degree which is commensurate with the

circumstances and such duty to exercise such care does not require the operator of a dangerous instrumentality to foresee or anticipate extremely unusual happenings. *Adams* v. *Bullock*, 227 N. Y. 208, 125 N. E. 93.

We do not think the several West Virginia cases involving liability growing out of the use of electric wires are controlling here. Where electric wires are in easy reach without the aid of artificial means, the question of liability becomes at least a jury question. This Court so held in *Love, Admr.* v. *Virginian Power Co.*, 86 W. Va. 393, 103 S. E. 352, a case in which a plaintiff was injured by a charged wire within four feet of the top of a slate pile; in *Bice* v. *Wheeling Electrical Co.*, 62 W. Va. 685, 59 S. E. 626, where plaintiffs injuries were received from excessive voltage in a flexible wire cord in a blacksmith's shop; in *Thomas* v. *Wheeling Electrical Co.*, 54 W. Va. 395, 46 S. E. 217, where plaintiff, working on a balcony of a theater building, contacted an electric wire only eighteen or twenty inches above the rail of the balcony on which he was working; and in *Snyder* v. *Wheeling Electrical Co.*, 43 W. Va. 661, 28 S. E. 733, 39 L. R. A. 499, 64 Am. St. Rep. 922, where plaintiff was injured by a charged wire which defendant's company had permitted to fall on a public street. Likewise recovery was upheld where high voltage wires are maintained in a place easily accessible by climbing, especially where the place is frequently used by children. Thus in *Thornburg* v. *City and Elm Grove Railroad Co.*, 65 W. Va. 379, 64 S. E. 358, a judgment for plaintiff was affirmed in the case of a boy fourteen years of age who contacted a wire suspended over a building by climbing upon a coping frequently used by children; and in the leading case of *Parsons, Admr.* v. *Appalachian Electric Power Co.*, 115 W. Va. 450, 176 S. E. 862, 100 A. L. R. 615, note 621, this Court upheld recovery by a boy eleven years of age who had climbed the superstructure of a bridge and contacted a wire twenty-six inches from the structure. These latter cases recognized the fact that children are apt to climb to easily accessible places. There is, however, in this jurisdiction not a single case where liability has

been upheld against one maintaining electrical wires which could be contacted only at a place not readily accessible or where the contact would require the use of unusual artificial means. In other jurisdictions, many cases have arisen covering the general subject matter under discussion. See notes in 17 A. L. R. 833; 41 A. L. R. 1337; 49 A. L. R. 1054; 100 A. L. R. *supra.*

The case of *Adams* v. *Bullock, supra,* is closely in point with the instant case. That case involved a boy twelve years of age swinging a wire about eight feet long as he came across a bridge frequented by children. There the parapet of the bridge was eighteen inches high. Only four feet, seven and three-fourths inches below the top of the parapet, there was a trolley wire, electricity from which shocked and burned the boy when he brought the wire he was holding in contact with the charged wire. The New York Court of Appeals reversed a judgment in Adams' favor entered on a jury verdict. Judge Cardozo speaking for the Court said: "But no vigilance, however alert, unless fortified by the gift of prophecy, could have predicted the point upon the route where such an accident would occur. It might with equal reason have been expected anywhere else. At any point upon the route a mischievous or thoughtless boy might touch the wire with a metal pole, or fling another wire across it. *Green* v. *W. P. Co.*, 246 Pa. 340, 92 A. 341, L. R. A. 1915C 151." In the *Adams* case the Court said that to hold the defendant liable in that case would be to charge it as an insurer.

We do not think that the defendant here reasonably could have anticipated that this boy would have and use a chain at least eight or nine feet long to contact its wires, no more than it could anticipate that a boy would throw a wire over its uninsulated trolley wires. In cases involving the latter state of facts, it is generally held that the maintenance of uninsulated overhead wires is not actionable. *Green* v. *West Penn Rys. Co.*, 246 Pa. 340, 92 Atl. 341, L. R. A. 1915C 151; *Stark* v. *Muskegon Traction & Lighting Co.*, 141 Mich. 575, 104 N. W. 1100, 1 L. R. A. (N. S.) 822; *Trout* v. *Philadelphia Electric Co.*, 236 Pa. 506,

84 Atl. 967, 42 L. R. A. (N. S.) 713; *Callaway* v. *Central Georgia Power Co.*, 43 Ga. App. 820, 160 S. E. 703. Because neither a court nor a jury, under the facts of the instant case, could reasonably say that anyone would have acted as decedent did, we are prompted to hold that the record here does not indicate a lack of care commensurate with the risk and therefore defendant is in no way liable for decedent's death. The fact that these wires had been electrified and contained high voltage for fifteen years prior to the accident without injury to anyone, confirms us in our belief that defendant could not have reasonably anticipated that the wires in question were dangerous to persons passing to and fro across the bridge.

The judgement of the trial court is reversed, the directed verdict reinstated, and judgment entered here in defendant's favor.

> *Judgment reversed; verdict reinstated; judgment here.*

MAXWELL, JUDGE, dissenting:

The case presents a jury question, in my belief. Therefore, this dissent.

The evidence tends to prove that there were marks on the upper flange of the steel girder indicating where the electric current passed through nails in the boy's shoes as he stood there. The flange, four inches above the water box, is immediately adjacent to the wooden parapet or fence which is thirty-nine and one-half inches in height above the flange.

The uppermost charged wire in the catenary system is nine feet five and one-half inches below the top of the fence. This wire and the two immediately underneath it were wholly unprotected against contact by any person on the bridge.

Was the maintenance of these wires unguarded from above negligence on the part of their owner? In my judgment that is a question of fact for jury determination.

Such manner of solution was employed in *Parsons* v. *Appalachian Electric Power Co.,* 115 W. Va. 450, 176 S. E. 862, 100 A. L. R. 615. There a boy of eleven years climbed into the superstructure of a bridge where he either fell against or touched with his hand a high voltage wire suspended on a wooden arm or bracket attached to the top portion of the bridge at a height of seventeen feet from the roadway on the bridge. A jury verdict for the plaintiff was upheld by both the trial court and this Court. It is not clear to me why the same manner of trial should not be followed in this case.

If, as in the *Parsons* case, it is proper to take into account the propensities of an active boy to climb, why is it not also expedient to anticipate the inclination of a child to dangle an object in his hand when crossing over a bridge, though death lurks in charged wires immediately below? Of course, circumstances must be considered, and here the foot-wide top flange of the large beam on the east side of the bridge presented an inviting place for a boy to walk. Travelers along the highway had frequently noticed children on the water box and the flat top of the beam. And when a child was on the latter, only a thirty-nine and one-half inch board fence afforded a safeguard. It was no higher than the armpits of the injured boy. Small boy, though he was, he could and did readily extend an arm full length over the same. What is more natural than for a boy to have in his hand a stick, or a swinging string, rope, wire or small chain, or some combination of them? Persons responsible for situations such as existed at this bridge, cannot close their eyes to childish impulses and characteristics, nor can they be indifferent to the fact that where there is a passageway over uninsulated and unguarded electric wires the law of gravitation itself accentuates the danger by forever pulling toward the wires any object thereabove. A happy, carefree boy who dangles a string or a wire proceeds not alone but in conjunction with Newton's law. Also, he acts under the inherent and irrepressible impulse of

youth to find outlet for surplus energy—a fact whereof all men must take notice.

In my judgment, there cannot be made any apt comparison between situations such as here presented and cases wherein a boy or other person on the ground makes contact, against the force of gravity, with a trolley wire many feet over his head. In such supposititious case, because of the more positive effort which would be involved in making contact, it could not properly be held that the owner of the electric wire should reasonably have anticipated the unusual conduct mentioned. And, even if the conduct were anticipated, there would be nothing he could do about it if the trolley system were to remain in service. But where there is a public passageway over trolley wires there may reasonably be anticipation of contact such as at bar, and the danger could readily be minimized or altogether averted by the installation of guards or shields.

The case of *Adams* v. *Bullock*, 227 N. Y. 208, 125 N. E. 93, cited by the majority, was wrongly decided in my opinion, and should not be taken as a worthy precedent. The court there applied harsh principles in total disregard of boyish propensities, and without the slightest regard to the obvious difference between the danger which attends passageways immediately over trolley wires, and the lesser danger which exists in streets or rights of way many feet underneath. Failure to note this manifest distinction is emphasized in the New York court's opinion, where, in justification of its refusal of recovery, though the accident occurred from overhead, the statement is made: "At any point upon the route a mischievous or thoughtless boy might touch the wire with a metal pole, or fling another wire across it."

In the instant case, the trial court set aside the verdict and awarded the plaintiff a new trial. This, I think, was proper, thus clearing the way for jury determination. I would affirm.

Judge Hatcher joins with me in this dissent.