MARY M. LANCASTER, *Administratrix of the Estate of Daniel K. Lancaster*

*v.*

THE POTOMAC EDISON COMPANY OF WEST VIRGINIA, *a corporation*

(No. 13087)

Submitted May 2, 1972.    Decided September 12, 1972.

Dissenting Opinion September 21, 1972.

Rehearing Denied November 13, 1972.

*Martin & Seibert, Clarence E. Martin, Jr.,* for appellant.

*Avey, Steptoe & Perry, Roger J. Perry,* for appellee.

KESSEL, JUDGE:

In this action for wrongful death instituted in the Circuit Court of Jefferson County by Mary M. Lancaster, administratrix of the estate of Daniel K. Lancaster, as the plaintiff, against The Potomac Edison Company of West Virginia, a corporation, as the defendant, the circuit court entered judgment on November 11, 1970, upon a jury verdict in favor of the plaintiff in the amount of $11,171.98. It is from this judgment that the defendant prosecutes this writ of error.

Hereinafter in this opinion, Mary M. Lancaster, administratrix of the estate of Daniel K. Lancaster, the plaintiff, will sometimes be referred to as the plaintiff or as the appellee; the deceased, Daniel K. Lancaster, will sometimes be referred to as the decedent; and The Potomac Edison Power Company of West Virginia, a corporation, the defendant, will sometimes be referred to as the defendant or as the appellant.

The primary questions presented for decision involve the sufficiency of the proof to support the verdict and the action of the trial court in granting certain instructions in behalf of the plaintiff and in refusing to give certain instructions in behalf of the defendant as they were originally offered.

This case arises out of a fatal accident of the plaintiff's decedent, an eighteen-year old youth, who had been engaged in painting the roof of a house, belonging to Mr. and Mrs. Robert Wallich, in Harpers Ferry, West Virginia. The decedent was electrocuted when he came in contact

with electric wires, which were strung near the eaves of the roof of the house and which were owned and maintained by the defendant.

On the day prior to the fatal accident, Calvin Alger employed the decedent and Larry T. Shumaker to assist him in finishing the painting of the Wallich home. On the morning of the accident, Shumaker and the decedent met Alger and assisted him in carrying a borrowed wooden ladder to the Wallich residence to use in their work. Alger and his brother had already done most of the painting. After mixing their paint, Alger and the decedent set up the wooden ladder in front of the Wallich residence and proceeded to finish painting the roof of the house.

Alger testified that, during the morning, he had been painting the roof of the house and that the decedent had held the ladder for him; and that the decedent then volunteered to paint the remainder of the three panels of the roof.

As a result of the manner in which the roof was being painted, it was necessary to turn around and dip the paint brush in a bucket of paint which was tied on a rope about six or eight feet down from the top of the ladder. Alger stated in his testimony that, after the decedent had been painting for about three or four minutes, he turned around to dip his brush in the bucket and a flash occurred and the decedent fell upon the roof.

The wire with which the decedent came in contact was approximately 12 to 18 inches from the house at the apparent point of contact. There was a distance of approximately 20 feet from the sidewalk to the wire. The wire was uninsulated and carried 12,000 volts of electricity. A former employee of the defendant, who testified in behalf of the defendant, stated in his testimony that the normal distance between a voltage wire and a building was not less than 12 inches nor more than 18 inches and that all of the wires in the defendant's distribution system were uninsulated. From the street or upon ascending the ladder, the wire was clearly visible to anyone. The wire

was, however, in back of the decedent and not visible to him when he was in the process of painting the roof of the house. Since the day of the accident and prior to a view by the jury, the wires have been relocated by the defendant· to a point approximately two feet and eight inches away from the Wallich residence.

Larry Shumaker testified that, upon his arrival at the Wallich home, he had mixed his paint and then painted the roof of a little shed in the rear of the house and the back porch of the house; that he was then told to paint the trim on the windows in the gable ends of the house; that he tried to use an aluminum ladder to reach the gable, but, finding the ladder too short, he went through the house to the upstairs and sat in a window and began to paint; that at no time did he see Alger ascend the ladder; that he did not hear Alger say anything to the decedent while the decedent was on the ladder; that he heard a "buzzing" noise and saw a puff of smoke; that he ran down the steps and onto the street; and that when he looked up he saw the decedent standing "about two rungs from the top of the ladder, bent over with his face in the spouting."

Alger testified that on the day he employed Shumaker and the decedent, he told them that, when he and his brother were moving an aluminum ladder which they had been using to paint the Wallich house, the ladder came in contact with one of the electric wires and threw them into the street, spilling the paint. He further testified that, after the decedent volunteered to ascend the ladder and paint the remaining panels, Alger asked him if he was "scared to go up", and the decedent replied that he was not afraid; that he warned the decedent to "watch that wire"; that he continued to warn the decedent about the wire while he was standing on the ladder; but that he "never thought there was any more danger to it by being on a wooden ladder."

Shumaker testified that he did not learn about the incident involving Alger's brother until approximately

one week after the decedent's death. Upon cross-examination by counsel for the defendant, Shumaker denied having given a portion of a signed statement shortly after the accident. The statement was read in its entirety to the jury, and the pertinent portion of it is as follows: "* * * On day I was hired by Calvin Alger, he did not mention the accident he had when he and his brother came in contact with the line. On Wednesday Calvin Alger told me and Daniel Lancaster about the spilled paint. Calvin said that the ladder knocked his brother into the road and spilled the paint when the ladder came in contact with line."

The case was submitted to the jury, who viewed the scene of the accident, upon the issues of the primary negligence of the defendant, the contributory negligence of the decedent, and the assumption of the risk by the decedent.

Counsel for the defendant contends that the trial court erred in refusing to grant his two motions for a directed verdict, one made when the plaintiff rested her case and the other at the end of all the evidence; in granting Plaintiff's Instructions Nos. 1, 2, 3, 5, 6, and 7, as amended by the trial court; in refusing to give Defendant's Instructions Nos. 3, 4, and 5, as originally offered, and in granting them as amended by the trial court; and in admitting the testimony of the decedent's mother that he was fearful of high places and did not like to take chances.

In order to determine whether the trial court was in error in refusing to direct a verdict in favor of the defendant, either at the close of the plaintiff's case or upon the conclusion of all the evidence, it is necessary to determine whether, as a matter of law, the defendant was guilty of any primary negligence and, if so, whether the plaintiff's decedent was contributorily negligent or assumed the risk incident to the task for which he was employed.

The maintenance of an uninsulated high voltage wire is not alone sufficient to establish negligence. *Jones v. Appalachian Electric Power Co.,* 145 W.Va. 478, 483, 115 S.E.2d 129, 132; *Musser v. Norfolk and Western Railway Company,* 122 W.Va. 365, 9 S.E.2d 524. This Court held in the *Musser* case that a person in charge of or maintaining an instrumentality which is inherently dangerous is not liable to one who is injured thereby in a manner which could not be reasonably anticipated. The duty of the power company in cases of this kind was stated in the first point of the syllabus of *Maggard v. Appalachian Electric Power Company,* 111 W.Va. 470, 163 S.E. 27, as follows: "Those who operate and maintain wires charged with dangerous voltage of electricity are required to exercise a degree of care commensurate with the dangers to be reasonably apprehended therefrom; but they are not insurers against all injury therefrom." See also *Johnson v. Monongahela Power Company,* 146 W.Va. 900, 123 S.E.2d 81. However, the rule is firmly established in this jurisdiction by many decisions of this Court that a power company which maintains electric lines of high or dangerous voltage in a place it knows or should anticipate others may lawfully resort for any reason, such as business, pleasure or curiosity, and in such manner as exposes them to danger of contact by accident or inadvertence, is bound to take precautions for their safety by insulation or other adequate means. *Love v. Virginian Power Company,* 86 W.Va. 393, 103 S.E. 352; *Humphreys v. Raleigh Coal & Coke Co.,* 73 W.Va. 495, 80 S.E. 803; *Runyan v. Kanawha Water & Light Company,* 68 W.Va. 609, 71 S.E. 259; *Thomas v. Electrical Company,* 54 W.Va. 395, 46 S.E. 217.

In *Runyan v. Kanawha Water & Light Company,* 68 W.Va. 609, 71 S.E. 259, the Court stated in the first point of the syllabus that workmen engaged in the necessary work of painting a bridge have a right to be on any part of the bridge, and an electric light company which maintains wires on the bridge must keep them properly

insulated in order that workmen coming accidentally in contact with the wires may not be injured.

*Humphreys v. Raleigh Coal & Coke Company,* 73 W.Va. 495, 80 S.E. 803, involved a situation in which the plaintiff was injured by coming in contact with an uninsulated electric wire in the coal mine of his employer in a part of the mine which he was working for the first time. The Court held that, although the "break-through and air course" in which the bare part of the wire in question was used were not passage ways nor places of ordinary work, there was occasion to enter them. In considering the question of the duty of the defendant to insulate the wires, the Court made the following statement (73 W.Va. 495, 500-01, 80 S.E. 803, 806): "Authorities cited abundantly show the user of electricity must provide against all probable contingencies and every possibility that can be readily foreseen or anticipated. If he knows any person is liable, in any way or for any reason, whether on a mission or enterprise of business or pleasure, to come in contact with a heavily charged electric wire he is using, he must insulate it, unless insulation is impossible by reason of incompatibility with the use to which it is devoted."

In *Thomas v. Electrical Company,* 54 W.Va. 395, 46 S.E. 217, an employee of an opera company which had leased a building went out on the balcony of the building to untack from the balcony some banners. While engaged in this work, he came in contact with one of the electric wires and was killed. We consider the following points of the syllabus of the *Thomas* case to be pertinent:

"4. It is the duty of electric companies to use very great care to keep the insulation of its dangerous wires perfect at places where people have a right to go for work, for business or for pleasure.

"5. When injury to a person comes from contact with a live electric wire from bad insulation at a place where there ought to be good, safe insulation for safety to persons, it is a case of negligence

on the part of the electrical corporation rendering it *prima facie* liable."

Counsel for the appellant relies upon several cases, including *Jones v. Appalachian Electric Power Co.,* 145 W.Va. 478, 115 S.E.2d 129; *Maggard v. Appalachian Electric Power Company,* 111 W.Va. 470, 163 S.E. 27; *Craft v. Fordson Coal Company,* 114 W.Va. 295, 171 S.E. 886; and *Musser v. Norfolk and Western Railway Company,* 122 W.Va. 365, 9 S.E.2d 524. We have considered these cases and the many others cited in the appellant's brief and have determined that they are distinguishable. In the instant case, the wires were located not more than eighteen inches from the roof or eave of a personal residence; it cannot be said that at some time the roof of the house might not require repair, replacement, or some type of renovation. The jury could conclude that the power company knew or should have known that someone working on the roof of the house could and probably would come in close proximity to the wires.

Counsel for the defendant contends that the plaintiff's decedent was contributorily negligent and assumed the risk involved. These questions in cases of this kind are usually left for the determination of the jury. *Sutton v. Monongahela Power Co.,* 151 W.Va. 961, 158 S.E.2d 98; *Wright v. Valan,* 130 W.Va. 466, 43 S.E.2d 364; 26 Am. Jur. 2d, *Electricity, Gas, and Steam,* Section 99, pages 307-08. See also *4-County Electric Power Association v. Clardy,* 221 Miss. 403, 73 So. 2d 144; *Rist v. Florida Power and Light Co.,* 254 So. 2d 540 (Fla. 1971).

Under the facts and circumstances of this case, we are of the opinion that the questions of negligence, contributory negligence and assumption of the risk are all questions for jury determination. In the instant case, Alger testified that he warned the decedent, as he ascended the ladder, to "watch that wire" and that he continued to warn him while the decedent was painting. Shumaker testified, however, that he was about three feet away from the decedent and that he did not hear

Alger say anything to the decedent. Moreover, Alger stated in his testimony that he "never thought there was any more danger to it by being on a wooden ladder" and that the decedent "was careful and I didn't see him do anything wrong when he was up there, * * *." "It is the peculiar and exclusive province of a jury to weigh the evidence and to resolve questions of fact when the testimony of witnesses regarding them is conflicting and the finding of the jury upon such facts will not ordinarily be disturbed." *Skeen v. C and G Corporation,* 155 W.Va. 547, pt. 2 syl., 185 S.E.2d 493. See *Nesbitt v. Flaccus,* 149 W.Va. 65, pt. 6 Syl., 138 S.E.2d 859.

Counsel for the defendant has assigned as error the giving of and the refusing of numerous instructions by the trial court. In each instance counsel stated clearly and distinctly the objections to each instruction. We have considered each objection to each instruction and have found no merit in any of the objections.

Plaintiff's Instruction No. 1, as amended and given by the trial court, reads as follows:

> "You are instructed that even if you believe from the evidence that Daniel Lancaster knew of the presence of the wires of the defendant company near the eaves of the roof of the house mentioned in the evidence, and further believe that when in the act of painting the roof of the house, he was in such close proximity to such wires that he accidentally touched them, this fact will not excuse the defendant from liability unless the jury further believes from all the evidence that Daniel Lancaster assumed the risk or was contributorily negligent."

Counsel for the defendant maintains that this instruction was erroneously given by the trial court for the reasons that the instruction was mandatory and invited a verdict against the defendant; that it ignored the defenses of assumption of the risk and contributory negligence; and that it was not wholly supported by the evidence.

By amendment the trial court attempted to cure the objection of counsel for the defendant which was based

upon the premise that the instruction ignored the defenses of contributory negligence and assumption of the risk. This could and perhaps should have been done in clearer and more precise language. We do not, however, consider the instruction to be erroneous in this respect.

The instruction merely told the jury that knowledge by the decedent of the presence of the wires did not bar recovery if the decedent accidentally touched the wires, unless he assumed the risk or was contributorily negligent. This is not a binding instruction, nor does it invite a verdict against the defendant. This is not an instruction which requires the jury under certain facts to return a verdict for a specified party.

While Plaintiff's Instruction No. 1 is in some respects incomplete and, standing alone, might have misled and confused the jury, it was not reversible error for the trial court to have given the instruction. *Nesbitt v. Flaccus,* 149 W.Va. 65, 138 S.E.2d 859; *Lawrence v. Nelson,* 145 W.Va. 134, 113 S.E.2d 241.

We believe that Plaintiff's Instruction No. 1, when read in conjunction with all of the other instructions, particularly Plaintiff's Instruction No. 6, could not have confused or misled the jury. "Instructions must be read as a whole, and if, when so read, it is apparent that they could not have misled the jury, the verdict will not be disturbed, though one of said instructions may have been susceptible of a doubtful construction while standing alone; and mere technical errors which could not have misled the jury will be regarded as insufficient cause for reversal." *The State Road Commission of West Virginia v. Bowling,* 152 W.Va. 688, 697, 166 S.E.2d 119, 125. See *Ellison v. Wood & Bush Company,* 153 W.Va. 506, 170 S.E.2d 321; *Mitchell v. The Virginian Railway Company,* 116 W.Va. 739, 183 S.E. 35.

Plaintiff's Instruction No. 6, which was given as amended by the trial court, is as follows:

"The Court instructs the Jury that if you believe, by a preponderance of the evidence, that

the defendant's power lines at the place of death which occurred in this case, were negligently and carelessly placed and/or maintained by the defendant, The Potomac Edison Company of West Virginia, in a dangerous and defective condition on July 26, 1967; that the defendant had notice of that condition, or by the exercise of reasonable care should have known of said condition; and that as the proximate result of the negligence or carelessness of the defendant, the plaintiff's decedent, Daniel K. Lancaster, came into contact with said power lines and was electrocuted, you should find for the plaintiff, unless you further find that the decedent, Daniel K. Lancaster, was guilty of negligence which proximately contributed thereto, or assumed the risk in climbing to the place where the wires were located, and remaining there to paint the roof."

This instruction is a proper and correct statement of the law as it relates to the evidence in this case. Counsel for the defendant contends, however, that the trial court erred in giving the instruction, as it was amended, for the reason that the instruction was a binding one which did not adequately negative contributory negligence or assumption of the risk because the acts constituting the contributory negligence or the assumption of the risk were not specifically set forth. In the ninth point of the syllabus of *Graham v. Wriston,* 146 W.Va. 484, 120 S.E.2d 713, this Court held that if a binding instruction clearly negatives contributory negligence, the instruction need not specifically state the conduct or the acts of the plaintiff which are alleged to constitute such contributory negligence. Under the facts and circumstances of this case, the trial court acted properly in reading Plaintiff's Instruction No. 6 to the jury.

Counsel for the defendant objected to the giving of Plaintiff's Instruction No. 2 upon the grounds that the instruction was abstract and misleading to the jury and that the sole duty of the power company was to exercise care commensurate with the dangers to be reasonably anticipated.

Plaintiff's Instruction No. 2, as amended by the trial court, is as follows: "You are instructed that a company maintaining an electric line, over which a current of high and dangerous voltage passes, in a place to which it knows or should anticipate others may lawfully resort for any reason, such as the repair, maintenance or painting of a residence, and in such manner as exposes them to danger of contact with it by accident or inadvertence, is bound to take precautions for their safety by insulation of the wire or other adequate means." This instruction conforms, in substantially the same form and language, with the sixth point of the syllabus of *Sutton v. Monongahela Power Co.,* 151 W.Va. 961, 158 S.E.2d 98, and the second point of the syllabus of *Love v. Virginian Power Company,* 86 W.Va. 393, 103 S.E. 352.

Plaintiff's Instruction No. 3, as amended and given by the trial court, is as follows: "You are instructed that persons or corporations owning, maintaining or operating electric power lines owe a duty to use care to avoid injury to persons rightfully in the area; and it is their duty either to insulate or isolate the wires, even in the absence of a statute expressly imposing this duty on them."

Counsel for the defendant maintains that this instruction was erroneously given by the trial court because it was abstract and misleading to the jury and that it required the defendant to use care rather than reasonable care to avoid injury to persons in the area. While we agree that the insertion of the word reasonable by the trial court would have been proper, we are of the opinion that its omission was not reversible error.

We find no merit in the contention of counsel for the defendant that Plaintiff's Instruction No. 3 is abstract and misleading. In *Sutton v. Monongahela Power Co.,* 151 W.Va. 961, 158 S.E.2d 98, this Court held that the degree of care required of a power company owning, maintaining or operating electric power lines is to use care commensurate with the danger to avoid injury to persons rightfully in the area. In 29 C.J.S., *Electricity,* Section 42,

page 1073, it is stated that the law requires one maintaining electric wires and poles to so place them as to guard against contact of any nature that might be anticipated. We are of the opinion that, under the evidence in this case and in the light of the other instructions given by the trial court to the jury, the trial court was correct in reading Plaintiff's Instruction No. 3 to the jury.

Plaintiff's Instruction No. 5 tells the jury that "* * * there is a presumption that, in the absence of evidence to the contrary, the decedent, Daniel K. Lancaster, exercised ordinary care for his own safety in accordance with the natural instinct of human beings to guard against danger." Counsel for the defendant maintains that this instruction is defective for the reason that there is no evidence to support the instruction and that the evidence in this case overcomes the presumption of ordinary care in favor of the plaintiff. In the light of the conflicting evidence in this case, we believe this to be a jury question. See *Leftwich v. Wesco Corporation*, 146 W.Va. 196, 119 S.E.2d 401; 13 M.J., *Negligence*, Section 56, page 578.

Plaintiff's Instruction No. 7 was amended to eliminate the objection of counsel for the defendant and was given by the trial court as amended.

Counsel for the defendant contends that Plaintiff's Instructions Nos. 1, 2, 3, and 5 ignore the rule that a person of unimpaired vision, who comes in contact with an instrumentality which is in plain view and is injured, is guilty of contributory negligence. We would note that Defendant's Instruction No. 5, which was given by the trial court after a minor amendment, told the jury that a person is "charged with the duty of seeing that which is in plain view."

We are of the opinion that the instructions given in behalf of the plaintiff could and should have been written in clearer and more precise language. The instructions, however, when read as a whole, could not have confused

or misled the jury. The doctrine of harmless error is firmly established as the law of this state by statute, court rule and court decisions. R.C.P. 61; Code, 1931, 58-1-2, as amended; *The State Road Commission of West Virginia v. Bowling*, 152 W.Va. 688, 166 S.E.2d 119; *Boggs v. Settle*, 150 W.Va. 330, 145 S.E.2d 446.

Counsel for the defendant offered seven instructions. All seven of the instructions were given by the trial court and four of them were given without objection. We have carefully examined the instructions and conclude that the objections have no merit and that the instructions were properly given. The defendant assigns as error the refusing of Defendant's Instructions Nos. 3, 4, and 5 as originally offered and granting them as amended by the trial court. While counsel is ordinarily entitled to have his instructions, if proper, read to the jury as they were prepared and presented, the changes or amendments by the trial court are minor and do not change or alter the meaning of the instructions. We find no merit in this assignment of error.

The decedent's mother testified that, at the time of her son's death, he was eighteen years and one month old; that he was between his junior and senior years in high school; that he made average grades in school and engaged in all kinds of sports. Over the objection of counsel for the defendant, the decedent's mother was permitted to testify about her son as follows:

> "Q. Mrs. Lancaster, did you ever have Danny go on the roof of your house?
>
> \* \* \*
>
> "A. Yes, he did.
>
> "Q. What was his attitude about doing this?
>
> "A. Well, he was afraid. He didn't have too much nerve not in anything in high places and things like that. He didn't like taking chances."

While these questions and answers may not be material to the issues before the trial court and the jury, we do

not believe that the admission of this testimony is reversible error. R.C.P. 61.

Plaintiff's attorney cross-assigned errors upon the grounds that the trial court refused to take judicial notice of the National Electric Safety Code and also that the trial court permitted the jury to examine the written statement of Larry Shumaker. In light of our conclusions herein, we do not deem it necessary to consider these cross-assignments of error.

For reasons stated in this opinion, the judgment of the Circuit Court of Jefferson County is affirmed.

*Affirmed.*

BERRY, JUDGE, dissenting:

I agree with the majority of the Court that the question of negligence on the part of the defendant, and that contributory negligence and assumption of risk on the part of the plaintiff are questions for jury determination. However, I am of the opinion that the giving of Instruction No. 1 by the court offered by the plaintiff constituted reversible error. This Instruction, which is quoted in the majority opinion, is not only abstract but is misleading and completely omits the essential statement that before there can be any liability on the defendant the jury must believe from the preponderance of the evidence that the defendant was guilty of negligence which was the proximate cause of the death of plaintiff's decedent. This is fundamental and cannot be ignored in an instruction which clearly indicates that the jury can find a verdict against the defendant without negligence on its part. This Instruction merely states that if he were in close proximity to the wires while painting the house and accidentally touched the wires, the defendant would not be excused from liability. This amounts to a mandatory or binding instruction by directing the jury that it can return a verdict for the plaintiff if the plaintiff accidently touched the defendant's wires. The Instruction was amended by the court so that the jury could find against

the defendant unless the jury further believed from all of the evidence that the plaintiff assumed the risk or was contributorily negligent. This resulted in additional confusion because it did not specifically set forth the acts which would constitute contributory negligence on the part of the decedent and such omission has been held to be prejudicial error. *Bragg v. C. I. Whitten Transfer Company*, 125 W.Va. 722, 26 S.E.2d 217; *Yates v. Mancari*, 153 W.Va. 350, 168 S.E.2d 746.

Instructions 2, 3, 4 and 5 offered by the plaintiff and given by the court are all abstract instructions but are not binding instructions directing the jury to find for the plaintiff, and it is true, as stated in the majority opinion, that Instruction No. 6 offered by the plaintiff and given by the court instructed the jury that it must believe by a preponderance of the evidence that the defendant was negligent with regard to the placing of the power lines and that this negligence was the proximate cause of the accident resulting in the plaintiff's decedent's death and they should find for the plaintiff unless it found that the plaintiff's decedent was guilty of negligence which proximately contributed thereto or that he assumed the risk in climbing to the place where the wires were located while painting the roof. It will be noted that this Instruction told the jury that before it could find for the plaintiff it must believe from a preponderance of the evidence that the defendant was guilty of negligence which was the proximate cause of the death of plaintiff's decedent.

The majority opinion states that the trial court attempted to cure Instruction No. 1 by the amendment so that it would not ignore the contributory negligence and assumption of risk defenses, and states that it should have been done in clearer and more precise language but does not refer to the fact, even after the Instruction was amended, that it did not specifically set out the acts constituting contributory negligence and assumption of risk. The majority opinion further states that although Instruction No. 1 was in some respects incomplete and

standing alone might have misled and confused the jury, but when read in conjunction with Instruction No. 6 offered by the plaintiff did not constitute reversible error because all instructions must be read as a whole. The case of *Lawrence v. Nelson,* 145 W.Va. 134, 113 S.E.2d 241, cited as authority for this proposition, was not a binding instruction and merely did not state that the prima facie negligence could be rebutted and inasmuch as another instruction did so state, it was held that they could be considered as a whole and the omission was not prejudicial error. This is an entirely different matter than what is involved with the defect in connection with plaintiff's Instruction No. 1 in the case at bar. Instruction No. 1 is not only misleading and tends to confuse the jury but is contradictory to Instruction No. 6. This Instruction would indicate that the plaintiff could recover from the defendant if he accidently touched the wires. Instruction No. 6 correctly states that he can recover only if the jury believed from a preponderance of the evidence that the defendant was negligent in the first instance. Therefore, Instruction No. 1 is contradictory to Instruction No. 6 and for that reason constitutes reversible error. 10 M.J., *Instructions,* § 28, p. 233.

It has been consistently held that a bad instruction cannot be cured by a good one inconsistent therewith. *Cobb v. Dunlevie,* 63 W.Va. 398, 60 S.E. 384; *McKelvey v. Chesapeake & O. Ry. Co.,* 35 W.Va. 500, 14 S.E. 261; *McCreery's Adm'x. v. Ohio River R. Co.,* 43 W.Va. 110, 27 S.E. 327.

A defect in one instruction is not cured by a correct statement in another, where the appellate court is unable to say that the jury could be misled by a defective instruction. *Cobb v. Dunlevie, supra; State v. Taylor,* 57 W.Va. 228, 50 S.E. 247.

A binding instruction which omits an essential element of the adversary's case is erroneous and such error is not cured by another instruction even though they submit such element to the jury. *Moore v. Hutchinson,* 107 W.Va.

275, 148 S.E. 78; *Shaver v. Consolidation Coal Co.*, 108 W.Va. 365, 151 S.E. 326; *Bragg v. Whitten Transfer Company, supra.*

It was held in the case of *Bragg v. Whitten Transfer Company, supra,* that if an instruction fails to tell the jury that it must find that the defendant's negligence was the proximate cause of plaintiff's injury this omission is reversible error.

For the reasons stated herein, I would reverse the judgment of the trial court, set aside the verdict of the jury and award the defendant a new trial.

I am authorized to say that Judge Carrigan joins in this dissent.