INIZE JONES, *Admrx.*, ESTATE OF KENNETH JONES, DECEASED

*v.*

APPALACHIAN ELECTRIC POWER Co., *etc., et al.*

(No. 11086)

Submitted May 4, 1960.          Decided July 12, 1960.

*Shaffer & Shaffer, H. G. Shaffer, Jr., H. G. Shaffer,* for plaintiff in error.

*Samuel D. Lopinsky, Arthur T. Ciccarello,* for defendant in error.

BROWNING, PRESIDENT:

Kenneth Jones, an employee of Harry Hatfield and Company, a contracting company, engaged in the construction of a road over the lands of the Red

Parrot Coal Company, hereinafter designated as defendant, was electrocuted when the boom of a crane around which he was working came into contact with an overhead, uninsulated, 2300 volt power line belonging to the Appalachian Electric Power Company, hereinafter called Power Company. His widow, Inize Jones, filed a claim against his employer, Harry Hatfield and Company, with the Workmen's Compensation Fund and was awarded the statutory benefits to herself and three dependent children. She then, as administratrix of her deceased husband's estate, instituted this action for wrongful death against the defendant and the Power Company. At the conclusion of plaintiff's evidence, a motion for a directed verdict in behalf of the Power Company was sustained by the court. The case proceeded against the defendant, against which the jury returned a verdict in favor of the plaintiff in the amount of $20,000.00, and judgment was entered thereon, to which judgment this Court granted a writ of error and supersedeas on September 28, 1959.

The material facts are not in dispute. Hatfield and Company, an independent contractor, was engaged by defendant to construct a road across its land, in the course of which it was necessary to bridge one or more streams. This bridging was accomplished by joining section of corrugated pipe, 3½ feet in diameter and approximately 7 feet in length, weighing between 350 and 500 pounds. It was necessary to use a crane in excavation and in raising the pipe from its position beside the road and lowering it into the desired location, the crane in question having a 45 foot boom, along which a wire rope was passed and connected with a chain which secured the pipe. At the time of the accident, plaintiff's decedent was pulling on the wire rope, or attached chain, in an effort to properly place it in position on the pipe and gave the crane operator a signal to raise the boom. Decedent then passed from the crane operator's view, but a fellow employee continued to give the "raise" signal,

until the boom touched the overhead uninsulated line of the Power Company. This 2300 volt line was 35 feet from the ground and on one side of a cross-arm 6½ feet distant from a similar line. Immediately afterwards, decedent was discovered to be dead, admittedly by electrocution. The crane operator had been warned about the wires by his foreman, and, a week or two previous to the accident, defendant's outside construction foreman had told the crane operator "to be careful around there that there was a lot of electric wires and to watch and not get that boom into them." There was also evidence that the boom had struck a wire the previous day without injury to anyone. A motion for a directed verdict in behalf of the defendant at the conclusion of plaintiff's evidence was overruled.

Defendant's evidence consisted of testimony by an employee of the State Road Commission that the minimum height for a 2300 volt line over Class A Highways in this State is 18 feet, and the general manager of defendant who testified, on direct examination, that he was familiar with the scene of the accident, had seen the crane involved and that such crane was capable of moving under its own power. On cross-examination, this witness testified that neither he, nor anyone in his behalf, or in behalf of the defendant, at any time called the Power Company to determine whether the power lines could be switched away from the location in which the crane was operating, but admitted that that could have been done. Defendant also, by avowal, introduced evidence that the present value of the award granted by the Workmen's Compensation Fund to the plaintiff and her three dependent children was $14,-987.00, payable at the rate of $105.00 per month, or a total amount paid to the date of the commencement of the action of $4,203.39. At the conclusion of defendant's evidence, a second motion for a directed verdict in behalf of the defendant was overruled.

After the jury had received the case and deliberated for a period of 1 hour and 15 minutes, the jury returned to the courtroom and requested that the testi-

mony of defendant's general manager be read, and, over defendant's objection, the entire testimony of that witness was re-read to the jury, which then retired and resumed its deliberations.

Seventeen assignments of error are made in this Court which may be summarized as follows: (1) The overruling of defendant's motions for a directed verdict; (2) the giving of Plaintiff's Instructions Nos. 1, 3, 4 and 5; (3) the refusal of Defendant's Instructions A, D, E, F, I and K; (4) the re-reading of the testimony of defendant's general manager to the jury, after the jury had received the case; and (5) the refusal to require a remittitur of the sums received, and to be received, by the widow and children from the Workmen's Compensation Fund.

The threshold question for consideration is whether the evidence was such as to present a factual question for determination by the jury upon the issue of the primary negligence of the defendant. The evidence shows that the relationship of the deceased and the defendant was that of invitor and invitee. The owner or occupant of the land owes to an invitee the duty of due care. The invitee, who comes upon the premises of the owner or occupant by invitation, has a right to assume that the premises are reasonably safe for the purpose for which he is invited to come upon such premises. *Starcher v. South Penn Oil Co.,* 81 W. Va. 587, 95 S. E. 28. However, the rule is firmly established in this jurisdiction by many decisions of this Court that the owner or occupant of the premises is not an insurer of the safety of a trespasser, licensee, or invitee, even when such person is injured or killed by coming in contact with a high voltage electric wire. *Maggard v. Appalachian Electric Power Co.,* 111 W. Va. 470, 163 S. E. 27; *Waddell v. New River Co.,* 141 W. Va. 880, 93 S. E. 2d. 473; and many cases cited therein to the effect that the rule stated above is applicable even in the case of children who are injured or killed by coming in contact with an uninsulated wire charged with electricity. These decisions are to the effect that

the maintenance of an uninsulated high voltage wire is not alone sufficient to establish negligence. The 3rd. Syllabus Point of *Musser, Adm'r. v. Norfolk and Western Railway Company,* 122 W. Va. 365, 9 S. E. 2d. 54, succinctly states the rule by which liability is determined. It reads: "A person in charge of or maintaining an instrumentality inherently dangerous is not liable to one who is injured thereby in a manner which could not be reasonably anticipated."

The trial court, in refusing to direct a verdict for the defendant, mentioned and undoubtedly relied upon the case of *Humphreys v. Raleigh Coal and Coke Co.,* 73 W. Va. 495, 80 S. E. 803. The plaintiff in that action was injured by coming into contact with an uninsulated electric wire in the coal mine of his employer in a part of the mine which he was visiting for the first time. The wire was about 4 feet from the floor. The action was instituted prior to the enactment of a workmen's compensation law in this State. This Court held that a person using "the silent mysterious force called electricity" in a place where he knows other persons may be exposed to it "is bound to take precaution for their safety by insulation of the instrument used in its application or some other adequate means." However, the facts in that case are easily distinguished from those in the instant case. In determining that the maintenance of the uninsulated wire under the circumstances was a negligent act on the part of the defendant, the Court said: "The break-through and air course in which the bare part of the wire in question was used were not passage ways nor places of ordinary work. Nevertheless, there was occasion to enter them, when they were adopted as proper locations for the pump and feed wire. There was a 'pump runner' whose duty it was, entering by the break-through and air course through which the wire ran, to visit the pump and keep it in operation when necessary, and it was also necessary for someone to place the pump in that place and remove it. Any of these persons stumbling, slipping or falling, or inadvertently throwing out a hand or

484

veering to the wall on which the wire was strung, were liable to come into contact with it and suffer consequent injury. * * *." A case more nearly approximating the instant case is *Maggard v. Appalachian Electric Power Co.,* 111 W. Va. 470, 163 S. E. 27, in which the plaintiff was injured by coming in contact with a high voltage uninsulated wire of the defendant, but this Court upon writ of error set aside the jury verdict in his favor and reversed the judgment upon it. There, as here, the plaintiff was an employee of an independent contractor, and came into contact with the wire, which was 32 feet in height, when he ascended a piece of mechanical equipment elevated near the wire. The Court, after stating that those who operate electric lines containing electricity must exercise a high degree of care, and that where such lines "are on, or dangerously near, bridges, buildings and the like where workmen are reasonably expected to go, the wires must be insulated or other adequate means used for protection.", said: "* * * But where the wires are at a height in the air at which they would not come in contact or of dangerous proximity to persons not reasonably expected to come near them, the owner or operator of the lines is not chargeable with negligence where some one, doing an act which he had no reason to expect or anticipate, suffers an injury which might not have been suffered if the wires had been at a higher elevation. * * *." In holding that the defendant was not, as a matter of law, guilty of primary negligence, the Court said: "* * * defendant could not reasonably anticipate the injury to plaintiff and no legal duty rested upon it to insulate its wires at that place or raise them higher. * * *." While the plaintiff in that case did not testify as to whether he knew the wires overhead were electric wires, or whether he was unaware of their nature, plaintiff's foreman testified that, though he did not know they were high tension wires, he knew that they were electric wires and had requested the defendant to raise them, with which request the defendant complied. The Court further said: "The request to move the wires out of the way of the

construction was done to the apparent satisfaction of the construction company. The contractor was apparently satisfied that danger was obviated, and defendant could not anticipate that the Construction Company would grossly neglect reasonable precautions for the safety of its employees. There was ample space for the safe operation of the steam shovel and its boom in the 32 feet of space between the ground and the wires; and there was no necessity in elevating the boom to the wires in order to release the clamshell from the cable. It was gross negligence on the part of the contractor to do so, and then send its employee into great danger.'' In the instant case, while the evidence is conflicting as to whether plaintiff's decedent was among the group who had been warned about the wires, it is undisputed that the crane operator had been so warned by both his own foreman and the defendant's outside foreman, which warnings should have been impressed on him by the fact that the boom of the crane had hit the wires on the day previous, and that the wires were in plain view.

Upon the facts in this case, the prior decisions of this Court and the general well established legal principles applicable thereto, the Court is constrained to hold that this defendant owed no duty to the deceased which it failed to discharge, and, therefore, that it was not guilty of negligence. Such a finding precludes the necessity of a discussion of proximate cause, and of the other assigned errors.

However, this case is here on writ of error and not by demurrer to the evidence, therefore, this Court can only reverse the judgment, set aside the verdict of the jury and grant the plaintiff a new trial. It is possible upon new evidence that such a trial might be had, and for that reason one other assignment of error will be discussed. This Court is of the view that the trial court correctly refused the defendant's motion for a remittitur in any amount as the result of awards of compensation made or paid to the widow, and the dependent children of deceased, by the State Compensa-

tion Commissioner. In *Mercer v. Ott,* 78 W. Va. 629, 89 S. E. 952, it was held that the right of recovery of damages against a tort feasor by the personal representative of the deceased did not prevent the deceased's dependents from receiving compensation from the Workmen's Compensation Fund. In *Merrill v. Marietta Torpedo Co.,* 79 W. Va. 669, 92 S. E. 112, it was held that an employee who had received compensation for an injury from the Workmen's Compensation Fund was not thereby estopped from maintaining an action for damages for the same injury against a third person not his employer whose negligence caused his injury. This quotation from the opinion in that case is pertinent: "Plaintiff's injury was not due to the negligence of his employer, but, according to the finding of the jury, to the negligence of defendant, an independent contractor to do a particular work. The compensation act does not deny right of action to a workman for injury received in the course of his employment, unless the negligence is that of the master, or such for which the master was liable at the common law. If the employe is injured in the course of his employment he is entitled to compensation out of the fund, whether his injury was occasioned by the negligence of the master or not; if occasioned by the negligence of a third person his right to compensation out of the fund is not thereby affected, nor is his right of action against such third person causing the injury impaired. The provision of the act is somewhat in the nature of life and accident insurance. That a person may be protected by accident insurance, and at the same time have right of action against the person whose negligence produced the accident resulting in his injury, is well settled." In *Brewer v. Appalachian Constructors, Inc., et al.,* 135 W. Va. 739, 65 S. E. 2d 87, this Court used this language: "The Christopher Coal Company and its employee also contend that they can not be joined with the other defendants in this action, for the reason that there can be only one judgment herein, arguing that any judgment rendered against them would necessarily be reduced by the sum received or

receivable from the workmen's compensation fund, and that any judgment against the other defendants would not be reduced by such sum. A familiar principle of law, requiring no citation of authorities, is that a plaintiff can have only one recovery for an injury. We see no reason why the rule should not apply where recovery or partial recovery is by way of an award from the workmen's compensation fund. It is also well settled that 'Partial satisfaction of the injured person by one joint tort-feasor is a satisfaction, *pro tanto,* as to all.' Point 5, syllabus, *Coal Co. v. Eary,* 115 W. Va. 46, 174 S. E. 573. This rule should also apply where partial payment for the injury has been made from the workmen's compensation fund on account of one of the joint tort feasors being a subscriber thereto.''

It will be noted that in the *Mercer* case it was held that the dependent of a deceased workman employed by a subscriber to the workmen's compensation fund could receive compensation from the fund and also maintain an action for damages against a tort-feasor other than the deceased's employer who caused decedent's death. Likewise, it was held in the *Merrill* case that ''An employee who receives compensation for an injury from the workmen's compensation fund, is not thereby estopped to sue a third person, not his employer, whose negligence caused his injury.'' Pt. 6, Syl., *Merrill v. Marietta Torpedo Co.,* 79 W. Va. 669, 92 S. E. 112. While in neither case was the question of remittitur raised, the statement in the opinion in the *Merrill* case that ''The provision of the act is somewhat in the nature of life and accident insurance. That a person may be protected by accident insurance, and at the same time have right of action against the persons whose negligence produced the accident resulting in his injury, is well settled.'' is persuasive at least.

The *Mercer* case was decided in 1916, the *Merrill* case in 1917. At that time there was little authority on the question, but now it is abundant. All of the states except three—Ohio, New Hampshire and West Vir-

ginia—have adopted subrogation statutes although in some states they are called "assignment" statutes. These statutes are as varied as they are numerous. No attempt will be made here to review them. These statutes fall into five general categories: (1) no subrogation, (2) absolute subrogation, (3) subrogation and direct action coexistent, (4) employee priority, and (5) subrogee priority. Larson's Workmen's Compensation 2, Subrogation, Section 74, pages 205-250. As heretofore stated, West Virginia falls within the first class. The cases cited in the footnotes support the language heretofore quoted by this Court in the *Merrill* case that the claim of an employee or the dependent of a deceased employee against the employer for compensation benefits and the claim of either against a third party tort-feasor are different in kind. The first is solely for statutory benefits and the second results from common law liability. Under the provisions of Chapter 23 of the West Virginia Code, entitled Workmen's Compensation, the relationship between the employer who is a subscriber to the fund and his employee is one of implied contract. The employer agrees that his injured employees may be compensated for injuries sustained in the course of and as a result of their employment without regard to negligence except in certain instances not here material. Thus the language in the *Brewer* case that: "* * * It is also well settled that 'Partial satisfaction of the injured person by one joint tort-feasor is a satisfaction, *pro tanto,* as to all.' * * *'" is a correct statement of the law but it is inapplicable where a plaintiff has received compensation from a collateral source such as workmen's compensation benefits, accident and health insurance, or otherwise. *Trumbull Cliffs Furnace Co. v. Shachovsky* (Ohio—1924), 146 N. E. 306 citing *Newark Paving Co. v. Klotz* (N.J.), 91 A. 91; *Mercer v. Ott,* 78 W. Va. 629, 89 S. E. 952; *Merrill v. Marietta Torpedo Co.,* 79 W. Va. 669, 92 S. E. 112, L.R.A. 1917F, 1043; and Shearman & Redfield, Negligence (6th Ed.), sec. 765. The employer of the deceased in the instant case is not a "joint tort-feasor"; he could not have

become a "tort-feasor" under the provisions of Chapter 23 of the Code unless the deceased's death had been due to his deliberate intent as provided by Section 2, Article 4, as amended. It is correct that a plaintiff can have only one "recovery" for an injury, but the statutory contractual award of compensation, which the deceased's widow received from the compensation fund was not a "recovery". The precise question here presented arose in *Ohio Public Service Company v. Sharkey* (Ohio—1927), 160 N. E. 687. Ohio, it will be recalled, is one of the three states that has no subrogation statute. Deceased, covered by compensation, was killed by the alleged negligence of a third party. The widow and minor children of the deceased were awarded compensation and the administrator then instituted an action against the alleged third party tort-feasor. One of the defenses of the defendant's answer set up the payment of compensation to the widow and dependent children, and the Supreme Court affirmed the lower courts in holding that the action could be maintained but that in the language of the third headnote "Recovery in such action at law can only be pro tanto, and only for such portion of the damage as has not been compensated for by allowance under the Workmen's Compensation Act." In the opinion the Court said:

> "In the absence of statutory enactment, as stated above, the decisions from jurisdictions in which detailed legislation has been enacted providing for a situation such as that presented upon this record cannot squarely apply. However, the reason of the ruling controls. The common-law doctrine that it is inequitable to allow a doubt (sic) satisfaction for the same injury was not abrogated, either expressly or impliedly, by the Workmen's Compensation Act (Gen. Code, sec. 1465-37 et seq.), the purpose of which is to insure to workmen injured during their employment the compensation, as Greenleaf so aptly states it, 'precisely commensurate with the injury.'"

Two years later the precise issue was again presented to the Ohio Court in *Truscon Steel Co. v. Trumbull Cliffs Furnace Co.* (Ohio), 166 N. E. 368, in which

the employer sought to recover from a third party tort-feasor the amount of compensation it had been required to pay to an employee injured by the negligence of such third party (see *Trumbull Cliffs Furnace Co. v. Shachovsky*, 146 N. E. 306), and the holding in the *Sharkey* case upon the pertinent issue was overruled by a unanimous Court. In this language the Court recognizes its erroneous reasoning and holding in the *Sharkey* case:

"In some of the states, the Workmen's Compensation Act recognizes this right of reimbursement where there has been a full recovery in a direct suit against a third party whose negligence was the cause of the injury, but nothing of that kind appears in the Workmen's Compensation Act of Ohio. Moreover, if a policy of insurance had been taken out by the steel company, which obligated the insurer to reimburse the steel company for any payments it might be required to make to its injured employees pursuant to the terms of the Workmen's Compensation Act, such policy of insurance, under the statute, would be entirely void, and no recovery could be made thereunder against the insurance company by the steel company. In view of the lack of statutory provision upon the subject, and also in view of the provisions of section 1465—101, supra, we are unable to see any merit in the claim of the plaintiff in error.

"It is urged that this holding is inconsistent with the third paragraph of the syllabus in the case of Ohio Public Service Co. v. Sharkey, Adm'r, 117 Ohio St. 586, 160 N. E. 687. This paragraph reads:

" 'Recovery in such action at law can only be pro tanto, and only for such portion of the damage as has not been compensated for by allowance under the Workmen's Compensation Act.'

"All of the members of this court think that the two decisions are irreconcilable on principle. The decision in the Sharkey Case was rendered after unusual consideration, both upon the hearing and upon application for rehearing. The court did not, however, at that time have the benefit of the presentation of many considerations which the instant case has offered. We think that the decision in the third paragraph of the syllabus of the Sharkey Case is erroneous, and therefore overrule it."

In evaluating the significance of the language heretofore quoted from the *Brewer* case, it is important to note the issues before this Court. Plaintiff had instituted an action of trespass on the case for personal injuries against Christopher Coal Company, a corporation, Hinerman, one of its employees, and four others, alleging concurrent negligence against all six defendants in a one-count declaration. The allegations in the declaration, which are referred to in the opinion of this Court, charging Christopher and Hinerman with ''deliberate intent'' to injure plaintiff would *indicate* that plaintiff was an employee of Christopher and that Christopher was exempt from liability by virtue of being a subscriber to the workmen's compensation fund, Code, 23-2-6, as amended, unless plaintiff's injury was caused by its ''deliberate intention * * * to produce such injury.'' Code, 23-4-2, as amended. It is not clear how this question would have been raised on demurrer in the absence of an allegation in the declaration that plaintiff was, at the time of his injury, an employee of Christopher, and that Christopher had ''elected'' to become a subscriber to the workmen's compensation fund and was not ''in default in the payment of such premiums and shall have complied fully with all other provisions of this chapter.'' Code, 23-2-6, as amended.

The trial court sustained the separate demurrers of each of the defendants and certified to this Court two questions: ''1. Whether there exists in this action a misjoinder of parties defendant. 2. Does the Declaration allege a cause of action against the defendants, or any of them?'' The Court properly held that there was no misjoinder of parties and that a cause of action was alleged against four of the defendants. Assuming that the issues heretofore mentioned were raised as to Christopher and Hinerman, the Court clearly held that the allegations of the declaration were not sufficient as to those defendants under the ''deliberate intention'' provision of Code, 23-4-2, as amended. Thus, the only two questions certified to this Court were fully answered. The

question of "remittitur" could not have arisen at the point in the litigation where the trial court made its ruling and certified its questions to this Court. Upon certification, this Court can only decide such questions as are certified to it by the trial court. *General Electric Co. v. A. Dandy Appliance Co.,* 143 W. Va. 491, 103 S. E. 2d 310; *Pope v. Edward M. Rude Carrier Corp.,* 138 W. Va. 218, 75 S. E. 2d 584; *Pancake Realty Co. v. Harber,* 137 W. Va. 605, 73 S. E. 2d 438; *Means v. Kidd,* 136 W. Va. 514, 67 S. E. 2d 740; *Weatherford v. Arter,* 135 W. Va. 391, 63 S. E. 2d 572.

Where a recovery is had in an action at law by an employee against his employer under the "deliberate intention" provision, it shall be only for "any excess of damages over the amount received or receivable under this chapter." Code, 23-4-2, as amended. This provision could have applied only to Christopher and Hinerman in any event. Upon the remand for trial the jury could have found for the remaining defendants or by inadvertance or otherwise the question of relief by way of remittitur might not have arisen when Christopher and Hinerman went out of the case. What was said in the *Brewer* opinion as to the rule of "partial satisfaction of the injured person by one joint tort-feasor is a satisfaction, *pro tanto,* as to all" applying where "partial payment for the injury has been made from the compensation fund on account of one of the joint tort-feasors being a subscriber thereto" was inapplicable. The rule was not carried into the syllabus and what was said in the opinion relative to it was probably dictum. In view of the holding of this Court upon the question in this case, the language in the *Brewer* opinion to the contrary is disapproved.

The judgment of the Circuit Court of Boone County is reversed, the verdict of the jury is set aside and the defendant is awarded a new trial.

*Reversed; verdict set aside; new trial awarded.*

GIVEN, JUDGE, dissenting:

Assuming that the Court in stating in Point 3 of the syllabus, as seems clearly apparent from the discussion in its opinion, that no remittitur·may· be filed in any case where compensation has been received, or is receivable, for an "injury" or for "death", from the workmen's compensation fund, means that double recovery of damages may be had in every such case, in an action by an employee against a third person, or a joint tort feasor, I must dissent.

In *Mercer, Adm'r. v. Ott, State Compensation Commissioner,* 78 W. Va. 629, 89 S. E. 952, the precise question was posed, the Court in its opinion taking notice that "This is an important question", proceeded to a full discussion and decision of the question. The Court first considered the right of a subrogee to have the amount of damages recoverable in an action reduced by the amount of compensation paid to an employee. Its holding was to the effect that there could be no double recovery, citing *McGarvey v. Independent Oil & Grease Co.,* 156 Wis. 590, wherein it was stated that, in such circumstances, a plaintiff "cannot have but one satisfaction". The Court then stated: "There is nothing in our statute which would prohibit an employee who has received damages from a third person, from receiving from this fund the amount provided by law by way of compensation for damages arising out of the same act. We must therefore rely upon principles of common law for the solution of the questions involved. It is conceded that the representative of the deceased received $1250 as damages from the railroad company. It is claimed by the compensation commissioner that the employer was liable for damages for not having given the deceased a safe place in which to work, and that therefore the recovery and payment of damages by one tort-feasor released the other. But does it follow that because the brick company would be released at common law under these circumstances that no resort may be made under our statute for further compensation

out of this fund by one who is a dependent? We think not. The money recovered from the railroad company or from the brick company would be distributed to the parties in the proportions provided by law in relation to the distribution of personal estate left by a person dying intestate, while sums received from the compensation fund would be paid to one or more dependents of the deceased. The amount which may be received for wrongful act causing death of another is fixed by law at such sum as a jury may deem fair and just, not exceeding $10,000.00. The amount of the average weekly earnings of the injured person at the time is made the basis upon which to compute the benefits. By the workmen's compensation act it was intended to create a fund to which an injured employee or his dependents in case of death can apply for compensation, instead of being compelled to collect the same by law. It partakes largely of the nature of pension. These considerations show conclusively that the right to compensation out of this found under the statute and the right to recover damages of a tort-feasor are of such radical different character that the rules of law invoked by the Honorable Commissioner are not applicable. The fact that the administrator recovered from the railroad company does not operate to prevent the mother of the deceased from receiving compensation from this fund as a dependent * * *''. It seems clear to me, therefore, that the last holding only was to the effect that double recovery may be had in a case where a personal representative of the estate of an employee sues for damages in addition to the workmen's compensation benefits received or receivable. As pointed out in the quoted statement, the cause of action declared on by the administrator is a wholly different cause of action than that which would exist in favor of the employee, and any sum recovered would not go to the employee, but would be distributed as provided by statute. The precise situation exists where an award is made to dependents of a deceased employee under the workmen's compensation statutes. This Court, on numerous occasions, has

pointed out that the claim of a dependent of an employee under the workmen's compensation acts is based on wholly different grounds than those of the employee. It is, in fact, a different cause of action, prosecuted by and for the benefit of different persons. For that reason no double recovery question actually arises in such cases. *Gibson v. State Compensation Commissioner*, 127 W. Va. 97, 31 S. E. 2d 555.

The majority in the instant case relies strongly on the case of *Merrill v. Marietta Torpedo Co.*, 79 W. Va. 669, 92 S. E. 112. That case expressly approved the holding in the *Mercer* case. It merely holds that the employee may sue a third person, a person other than the employer, for negligence, and, so far as I can determine, has no relation to the question of "double recovery" other than that which results from approval of the holding in the *Mercer* case. It can hardly be contended that the state compensation commissioner has any judicial or administrative powers other than such as are necessary to determine the granting or refusing of benefits under the workmen's compensation acts, certainly not to determine the right to prosecute an action at law based on negligence.

The *Brewer* case, which contained the language expressly disapproved in the opinion in the instant case, was a wholly different type of action, based solely on a cause of action allegedly existing in favor of the employee. Moreover, memorandums made in the decision conference at which the *Brewer* case was decided clearly establish that the question was fully discussed, considered and voted on in accordance with the language now disapproved by the majority, three new members participating. True, the statement was made in a case here on certification, but that was not an attempt to reappraise, disapprove or overrule a prior holding in a proceeding wherein the question was not involved, but to point out a supposedly settled proposition controlled by common law, in aid of litigants on the trial of the case, as then appeared very likely to be had after remand.

The majority apparently finds support in the statement contained in the *Merrill* case to the effect that the pertinent provision of the workmen's compensation act is "somewhat in the nature of life or accident insurance". The statement is correct, but the application made thereof by the Court, it appears to me, makes it exactly like insurance. Yet, an employee has nothing to say as to the amount of benefits payable, the same being fixed by statute, the employee makes payment of no premiums, has nothing whatever to say as to the amount of premiums paid by the employer, or whether the employer elects to become a subscriber to the fund. Morever, an action on an insurance policy is a wholly different type of action from one by an employee based either on negligence or a statutory right to workmen's compensation benefits. It should not be overlooked that this Court has consistently held that any right to any such benefits must result from a compensable injury as defined in the statutory provisions, not on the existence of an insurance policy.

While it may be true that the holdings of the majority of other jurisdictions are in accord with the holding of the Court in the instant proceeding, it definitely appears from the majority opinion that such holdings were made necessary by statutory provisions applicable only in the respective jurisdictions, it being pointed out that "All of the States except three, Ohio, New Hampshire and West Virginia", have adopted statutes relating to the matter. Does not the fact that all states except three have found it necessary to enact statutes to effect the change in the common law rule, as established by the *Mercer* and *Merrill* cases, indicate that this Court should not assume the power to do so? The situation is clearly made to appear by the action of the Court in the case of *Truscon Steel Co. v. Trumbull Cliffs Furnace Co.,* 120 Ohio St. 394, 166 N. E. 368, so strongly relied on by the majority opinion in the instant case, apparently for the reason that a prior holding to the contrary was overruled. In the case wherein the prior holding was overruled, *Ohio Public*

*Service Co. v. Sharkey,* 117 Ohio St. 586, 160 N. E. 687, it was held: "3. Recovery in such action at law can only be pro tanto, and only for such portion of the damage as has not been compensated for by allowance under the Workmen's Compensation Act". It was there pointed out, however, that the facts involved occurred "before the effective date of the 1923 Amendment, and, while the decision was pronounced after such effective date, the 1912 form of the constitutional provision applies to and controls the decision". Moreover, it appears in the quotation from *Ohio Public Service Company v. Sharkey,* supra, contained in the majority opinion in the instant case, that "The common-law doctrine that it is inequitable to allow a doubt (sic) [double] satisfaction for the same injury was not abrogated, either expressly or impliedly, by the Workmen's Compensation Act (Gen. Code, sec. 1465-37 et seq.), the purpose of which is to insure to workmen injured during their employment * * * [compensation] 'precisely commensurate with the injury' ", establishes conclusively, I think, when read with the statement relating to the amendment to the State Constitution, that the decisions were wholly controlled by the pertinent statutes and the constitutional amendment. No such constitutional provision or statute exists in this State.

The majority admits the statement expressly disapproved to be "a correct statement of law", pointed out in the *Mercer* case to be the true common law rule, yet refuses to apply it in situations where payments of benefits under workmen's compensation laws are involved. I think there no sound basis for the different treatment. Our Constitution, Article VIII, Section 21, provides that the common law in force at the time of the adoption of the Constitution "shall be and continue the law of the State until altered or repealed by the Legislature". Though the holding pointed out in the *Mercer* case has existed for more than forty years, the Legislature has not seen fit to change the common law rule. Here the Court has voluntarily

assumed the right to do so, in a proceeding wherein the question was not involved and the only reason for considering the question is that on remand a new "trial might be had".

Though the holding first considered in the *Mercer* case, on which the disapproved language was based, was in relation to a wholly different type of action than that of the instant case, that holding is now, as I understand, impliedly overruled, notwithstanding the admission of the correctness of the statement of the common law principle. In such circumstances, I think it is not mere figurative language to say that the principle of stare decisis has been "thrown to the winds", and that the precedent established by the *Mercer* and *Merrill* cases, of long standing and recognition, has not been accorded respect.

Being of the views indicated, I respectfully dissent.