LEWIS JONES *and* RUTH JONES, *his Wife,*

*v.*

LAIRD FOUNDATION, INC. *etc., et al.*

(No. 13196)

Submitted January 24, 1973.     Decided March 6, 1973.

Concurring Opinion April 10, 1973.

*Leon T. Copeland, Stephen P. Meyer,* for appellants.

*Steptoe & Johnson, Wilson Anderson,* for appellees.

NEELY, JUDGE:

This case is an appeal by plaintiffs below from a final order of summary judgment by the Circuit Court of Fayette County entered in June 1971. The pleadings show that in April 1969, the plaintiff, Lewis Jones, was injured while working for the Cannelton Coal Co. and was hospitalized under the care of defendant physician, Segundo Sanchez, who was neither an agent nor employee of plaintiff's employer, the Cannelton Coal Co.

The plaintiff alleges that after he was released from care by Dr. Sanchez he returned to work in September 1969, but that the original injury had not been treated properly, causing discomfort and pain, and that corrective measures were advised by other physicians. Corrective measures, requiring hospitalization and bone graft surgery, were performed in 1970. The plaintiff received Workmen's Compensation benefits, including weekly compensation and payment for medical and hospital expenses, for treatment of both the original injury and the subsequent hospitalization and bone graft corrective surgery.

The facts of this case are almost identical to those presented in the landmark case of *Makarenko v. Scott,* 132 W.Va. 430, 55 S.E.2d 88 (1949) in which plaintiff, Alexander Makarenko, sought to recover damages from the defendants, Dr. W. W. Scott and Williamson Memorial Hospital, for personal injuries which he claimed were the result of Dr. Scott's negligent and unskillful treatment of an original, employment connected injury. In *Makarenko,* as in this case, the doctor was not a fellow employee of plaintiff. Also, as in this case, plaintiff was entitled to Workmen's Compensation benefits for both the original employment related injury and any later aggravations of the original injury.

In *Makarenko* this Court held that the common-law principle that a man is entitled to but one recovery for any wrong bars a separate action against a physician who negligently treats an injury covered under the Workmen's Compensation law. The Court reasoned that as both the original injury and the later aggravation are compensable, the claimant receives a full recovery from the Fund for both injuries. This bars an action in tort against the doctor or hospital for damages.

In *Makarenko,* this Court said in the syllabus, point 1:

> "When a person sustains a personal injury, caused by the negligence of a wrongdoer, or the injury received is such as entitles the injured person to an award of compensation under the workmen's compensation law of this State, and the injured person exercises reasonable care in the selection of a competent physician and hospital to treat him for such injury, which is aggravated by the negligent or unskillful treatment rendered by them, he can not, as a general rule, maintain an action against such physician or hospital for damages which result from the aggravation of the original injury. In each case the law regards the aggravation as a part of the immediate and direct damages which naturally flow from the original injury."

Based upon the principle of *stare decisis* and in accord with *Makarenko,* the Circuit Court of Fayette County granted summary judgment to the defendants in this case. We granted a writ of appeal and error for the purpose of reviewing the propositions of law enunciated in *Makarenko,* as review seemed justified under the persuasive dissenting opinions of two judges in the *Makarenko* case.

This Court is of the opinion that the holding of *Makarenko* was not the law of this State before its articulation in 1949, and further, that the holding in *Makarenko* is in dissonance with decisions in related areas of law written after 1949. Therefore, *Makarenko* is an aberration in the common-law of this State, and we

hereby expressly overrule its holding in its entirety and commend even its lingering memory to oblivion.

The fundamental error in logic made in the *Makarenko* decision was to conceive of the employee's claim against the Workmen's Compensation Fund as a cause of action arising *ex delicto,* rather than as a cause of action arising *ex contractu.* The right of an employee to recover under Workmen's Compensation is based upon the status of the employee and not the negligence of the employer, *Cudahy Packing Co. v. Parramore,* 263 U.S. 418, 44 S. Ct. 153, 68 L. Ed. 366, (1923). Workmen's Compensation is contractual in nature, as the provisions of the Workmen's Compensation Act become an integral part of the contract of employment between the employer and employee. *Lancaster v. Compensation Commissioner,* 125 W.Va. 190, 23 S.E.2d 601 (1942). Common-law rules regulating the assessment of damages in actions *ex delicto* do not apply to claims under Workmen's Compensation, as the compensation award depends entirely on the severity of the injury and the employee's wage at the time of the accident, and not upon the amount of common-law damage done to the employee or his dependents.

In *Makarenko* the Court apparently disregarded the long established principle in this State that Workmen's Compensation is to be regarded as a collateral source of benefits, and that compensation is therefore not to be considered in mitigation of damages in an action against a third party tort-feasor. We believe that the Court's distinction in *Makarenko* between joint tort-feasors and successive tort-feasors is without sufficient logical foundation. In the case of *Merrill v. Marietta Torpedo Co.,* 79 W.Va. 669, 92 S.E. 112 (1917), decided long before *Makarenko,* the Court expressly placed Workmen's Compensation awards within the familiar "Collateral Source Rule." 25 C.J.S. *Damages* § 99(1-3). Therefore Workmen's Compensation is no more a proper consideration in mitigation of damages than health or accident insurance.

In *Merrill* the Court said at page 679:

"* * * If the employe is injured in the course of his employment he is entitled to compensation out of the fund, whether his injury was occasioned by the negligence of the master or not; if occasioned by the negligence of a third person his right to compensation out of the fund is not thereby affected, nor is his right of action against such third person causing the injury impaired. The provision of the act is somewhat in the nature of life and accident insurance. That a person may be protected by accident insurance, and at the same time have right of action against the person whose negligence produced the accident resulting in his injury, is well settled."

This Court does not believe that *Merrill* can logically be distinguished from *Makarenko* on its facts, as the distinction between joint tort-feasors and successive tort-feasors is illusive.

The *Makarenko* opinion attempted to distinguish *Tawney v. Kirkhart,* 130 W.Va. 550, 44 S.E.2d 634 (1947), from the facts in the *Makarenko* case. In *Tawney,* plaintiff's decedent was an employee of a subscriber to the Fund. Plaintiff instituted an action for damages against a railroad company and plaintiff's decedent's fellow employee for wrongful death caused jointly by both defendants. *Tawney* involved the liability of a fellow employee, and this Court rejected the contention of the defendant fellow employee that because both he and the deceased were employees of the same employer, who was a subscriber to the Fund, that defendant was protected by the umbrella of the Fund from liability for his own negligence.

The *Tawney* case in turn, expressly overruled *Hinkelman v. Wheeling Steel Corporation,* 114 W.Va. 269, 171 S.E. 538 (1933), which had held that a company doctor was not liable for the aggravation of injuries to a fellow employee when both the doctor and the employee were employed by the same employer who was a subscriber to the Fund. The logic in *Tawney* which

compelled the overruling of *Hinkelman* should also have dictated an opposite result in *Makarenko.*

When the *Tawney* case expressly overruled *Hinkelman,* it established the law in this State that an empoyee covered by the Workmen's Compensation Fund can recover from a doctor for negligent aggravation of his injuries, even if that doctor is a fellow employee. However, in 1949, after the decision in *Makarenko,* the West Virginia Legislature amended the Workmen's Compensation Act to exempt from liability officers, managers, agents, representatives, and employees of subscribing employers. Chapter 23, Article 2, Section 6a, *Code of West Virginia,* 1931, as amended.

This amendment changed the application of *Tawney* with regard to fellow employees, but in so doing, it did not reinforce the general logic of *Hinkelman,* but merely recognized the specific result in *Hinkelman* by statute. Since this last extension of immunity in 1949, the total statutory grant of immunity is clear and unambiguous. With the exception of those persons erroneously added by decisional law through the narrow factual situation of *Makarenko,* the general rule is that those persons not expressly granted immunity from suit by the Workmen's Compensation Law are subject to common-law suit for damages. Therefore as to all persons not within the class protected by *Code* 23-2-6a, *Tawney* still reflects the correct law.

The *Makarenko* opinion also attempted to distinguish joint tort-feasors from successive tort-feasors, although the Court did not use the phrase "successive tort-feasors". Chapter 55, Article 7, Section 12 of the *Code of West Virginia,* 1931, specifically provides that a release of one joint tort-feasor shall not bar an action against the other. *Code* 55-7-12 says:

> "A release to, or an accord and satisfaction with, one or more joint trespassers, or tort-feasors, shall not inure to the benefit of another such trespasser, or tort-feasor, and shall be no bar

to an action or suit against such other joint trespasser, or tort-feasor, for the same cause of action to which the release or accord and satisfaction relates."

There is no logical reason why the policy expressed in *Code* 55-7-12 regarding joint tort-feasors should not also apply to successive tort-feasors. Whether recovery against one tort-feasor is barred by a release or accord and satisfaction with respect to another should not depend upon the linguistic characterization of a wrong as a "joint," as opposed to a "successive," tort. Linguistic distinctions of this type impose an impossible burden on the discretion of a court.

In the case of *Jones v. Appalachian Power Co.*, 145 W.Va. 478, 115 S.E.2d 129 (1960), decided after the *Makarenko* case, this Court again applied the collateral source rule to benefits derived under Workmen's Compensation in a joint tort situation. In *Jones* the plaintiff's decedent was killed when the boom of a crane touched an overhead uninsulated electric line of the defendant power company. At the time of the accident plaintiff's decedent, employed by the crane operator, was pulling on a wire rope, or chain, which was connected to the boom of the crane. Plaintiff sued and recovered from the defendant power company although plaintiff's decedent was covered under Workmen's Compensation. This Court held that compensation benefits could not be considered by the jury in mitigation of plaintiff's damages in an action against the power company. At page 488 the Court said:

"The cases cited in the footnotes support the language heretofore quoted by this Court in the *Merrill* case [*Merrill v. Marietta Torpedo Co.*, 79 W.Va. 669, 92 S.E. 112 (1917)] that the claim of an employee or the dependent of a deceased employee against the employer for compensation benefits and the claim of either against a third party tort-feasor are different in kind. The first is solely for statutory benefits and the second

results from common law liability. Under the provisions of Chapter 23 of the West Virginia Code, entitled Workmen's Compensation, the relationship between the employer who is a subscriber to the fund and his employee is one of implied contract. The employer agrees that his injured employees may be compensated for injuries sustained in the course of and as a result of their employment without regard to negligence except in certain instances not here material. Thus the language in the *Brewer* case that: '* * * It is also well settled that "Partial satisfaction of the injured person by one joint tort-feasor is a satisfaction, *pro tanto,* as to all." * * *' is a correct statement of the law but it is inapplicable where a plaintiff has received compensation from a collateral source such as workmen's compensation benefits, accident and health insurance, or otherwise. *Trumbull Cliffs Furnace Co. v. Shachovsky* (Ohio-1924), 146 N.E. 306 citing *Newark Paving Co. v. Klotz* (N.J.), 91 A. 91; *Mercer v. Ott,* 78 W.Va. 629, 89 S.E. 952; *Merrill v. Marietta Torpedo Co.,* 79 W.Va. 669, 92 S.E. 112, L.R.A. 1917F, 1043; and Shearman & Redfield, Negligence (6th Ed.), sec. 765."

This Court believes that our action today in overruling *Makarenko v. Scott* in no way articulates a new principle of law. Rather we believe that *Makarenko* was a departure from the established common-law of this State. We overrule *Makarenko* because it was a mutation in one limited area of tort law, which has jeopardized consistent legal reasoning in every other area of tort law since 1949.

While the forms of procedure require that this Court reverse the Circuit Court of Fayette County, we recognize that the learned Circuit Judge correctly applied the principles of law as established by this Court, and that, in substance, the onus of reversal is upon ourselves and not upon the Circuit Court. Accordingly the summary judgment in favor of defendants is reversed, and the case is remanded to the Circuit Court of Fayette County

with directions to proceed to trial on the merits in conformity with this opinion.

*Reversed and remanded with directions.*

SPROUSE, JUDGE, concurring:

Respectfully, I concur with the decision embodied in the principal opinion in this case.

The workmen's compensation laws of this State are purely a creature of our Legislature. The majority opinion in *Makarenko v. Scott, supra,* committed fundamental error in grafting onto those laws a principle of common law alien to the Legislature's purpose in enacting the workmen's compensation legislation.

In reaching its final conclusion in the *Makarenko* case, the Court reviewed a large area of the law of negligence, but reduced to its basic reasoning the plaintiff there was denied the right to sue a negligent doctor on two legal principles. The plaintiff, as here, was a statutory recipient under the workmen's compensation laws whose original injury was aggravated by the treatment of a negligent doctor. Both the basic legal principles considered by *Makarenko,* however, are rooted deeply and solely in the common law.

The first principle was that a person who negligently causes personal injuries is liable for increased damages due to the negligence of a physician who treats and aggravates the original injury when the injured person exercises reasonable care in selecting the physician. This is almost a universal rule and is certainly the rule in West Virginia. *Mier v. Yoho,* 114 W.Va. 248, 171 S.E. 535; Annot., 100 A.L.R.2d 808.

Actions by the injured party against a malpractitioner were not barred by this doctrine, rather it was only when the injured party totally released the original tort-feasor that a subsequent action against the malpractitioner was barred. *Mier v. Yoho, supra;* 22 AM. JUR. 2d, *Damages,*

Sections 112-13, pages 163-65; Annot., 100 A.L.R.2d 808; Annot., 40 A.L.R.2d 1075. Many courts have in recent years even reversed this position. 61 AM. JUR. 2d, *Physicians, Surgeons, and Other Healers,* Section 221, pages 365-68; Annot., 39 A.L.R.3d 260. Even assuming, however, *Mier v. Yoho, supra,* still to be the law in West Virginia, this does not equate a release in a common-law action for negligence with the receipt of payments by a workmen's compensation claimant.

Early in American jurisprudence this rule was developed into the law of common-law damages not to protect a negligent doctor, but primarily to make it simpler to prove total damages in a personal injury case. 22 AM. JUR. 2d, *Damages,* Section 111, page 162; Annot., 100 A.L.R.2d 808 and the cases cited therein.

The view that an original tort-feasor is liable for the subsequent damage caused by the mistake or lack of skill of a physician or surgeon whose treatment aggravated the original injury has been generally based upon the reasoning that the additional harm is either (1) a part of the original injury; (2) a natural and probable consequence of the tort-feasor's original negligence; or (3) the normal incidence of medical care necessitated by the tort-feasor's original negligence. The cases speak in terms of "proximate cause", and "foreseeable intervening cause". 22 AM. JUR. 2d, *Damages,* Sections 112-13, pages 163-65.

Once the courts developed the theory that the original tort-feasor was liable not only for the damage caused by his negligence but for the additional damage caused by a treating physician, it was a logical extension of these decisions to bar an action against a negligent doctor after a release of the original tort-feasor. "Proximate cause", "foreseeability" and similar common-law conceptional terms merged the damages for this purpose. Conversely, negligence and the related concepts of "proximate cause" and "foreseeability", the very essential factors in the "release" doctrine, play no role

at all in the law of workmen's compensation. This is the major reason why a release of common-law liability cannot be equated with acceptance of payment under workmen's compensation.

The very purpose of the workmen's compensation laws is to release both employer and employee from the often burdensome common-law rules of liability and damages. Its policy is to protect the employer from expensive and unpredictable litigation and to provide compensation for injuries to employees without the burdensome requirements of proving common-law negligence. The sharp departure of the workmen's compensation laws from common-law principles is apparent throughout its various provisions.

Chapter 23, Article 2, Section 6, Code, 1931, as amended, expressly provides that an employer in good standing:

> " * * * shall not be liable to respond in damages at common law or by statute for the injury or death of any employee however occurring, * * * ."

The award to the employee is not based on the negligence of the employer or on any other wrong. It is simply compensation for his being injured in promoting the industrial causes of the State. It permits the employee to receive payments for injury through administrative procedures but severely restricts the type of damages he could receive. He receives nothing for disfigurement, mental suffering, pain, and his recovery for future loss of earning power is severely restricted, as is for that matter in some cases, his right for future medical expenses. All of the injured worker's rights and obligations are contained in the workmen's compensation laws.

Chapter 23, Article 2, Section 6a of the Code of West Virginia, 1931, as amended, extends the employer's immunity defined in 23-2-6, Code, 1931, as amended, to officers, managers, agents, representatives or employees of the employer and to none other. If the Legislature had intended the worker's receipt of compensation payments

to serve as a release or immunity to negligent physicians, strangers to the act, it would have so provided.

It is true under any common-law negligence action that there can be only one full recovery and satisfaction from any tort-feasor is satisfaction of the total damages. *New River & Pocahontas Consolidated Coal Company v. Eary*, 115 W.Va. 46, 174 S.E. 573; Annot., 112 A.L.R. 553. This is a common-law principle. The West Virginia Legislature either by accident or design, however, permits double recovery in a limited area. Such double recovery is allowed a worker injured in covered employment where the injury is caused by a third party tort-feasor. The injured party receives compensation and is allowed to sue the third party. *Merrill v. Marietta Torpedo Co., supra; Mercer v. Ott*, 78 W.Va. 629, 89 S.E. 952. This rule of law permitting a workmen's compensation recipient to bring an action against a third party tort-feasor on the same injury for which he was compensated is by far the majority rule in the United States. "When compensable injury is the result of a third person's tortious conduct, all statutes but two preserve a right of action against the tort-feasor, since the compensation system was not designed to extend immunity to strangers." 2 LARSON, WORKMEN'S COMPENSATION LAW, Section 71:00, page 165.

" * * * Almost every jurisdiction dealing with the question has recognized in some form that a suit will lie against a physician who has aggravated a compensable injury by malpractice." 2 LARSON, WORKMEN'S COMPENSATION LAW, Section 72:61, page 226.4, citing numerous cases; see 61 AM. JUR. 2d, *Physicians, Surgeons, and Other Healers*, Section 220, page 364. Only one state (West Virginia under the *Makarenko* doctrine) relieved the malpractitioner from all tort liability. 2 LARSON, WORKMEN'S COMPENSATION LAW, Section 72:61, page 226.7.

There may be serious doubt about the desirability of permitting double recovery even in this limited area of the law. This, however, is strictly a matter within the prerogative of the Legislature. The vast majority of our

states prevent double recovery by their statutes—not by permitting a tort-feasor physician to go free perhaps at the expense of an innocent employer who contributes to the fund but by apportioning the damages. This is accomplished principally by requiring election, subrogation or a similar device. 2 LARSON, WORKMEN'S COMPENSATION LAW, Sections 72-74, pages 174-226.138.

New York, for example, permits the employee to recover the entire malpractice damage from the doctor, but limits the compensation from the employer solely to the damages for the original injury. *Parchefsky v. Kroll Bros.*, 267 N.Y. 410, 196 N.E. 308. West Virginia is apparently one of only two states which has no provision for election or subrogation in its workmen's compensation laws. Annot., 28 A.L.R.3d 1066, 1124-25. Again, this is a legislative question, but, until the Legislature has balanced the equities, it is not for this Court to compound the inequity by permitting the negligent physician the protection of a government umbrella with the employer footing the bill.

The cases of *Tawney v. Kirkhart, supra,* and *Hinkelman v. Wheeling Steel Corporation, supra,* discussed extensively in the principal decision relate to the question of the liability of a co-employee. The holdings were mooted by Chapter 23, Article 2, Section 6a exempting tort-feasor employees from suit by the injured workmen's compensation recipient. The physician involved in the instant case is not a co-employee. For these reasons this discussion in the principal decision has no bearing on this case.

It is also felt that the discussions concerning "collateral source" and "joint" or "successive" tort-feasors, although containing some correct expressions of law, are inapplicable to this case.

All the members of the Court strongly agree that the majority opinion in *Makarenko v. Scott, supra,* was committed to an erroneous proposition of law. It has been a controversial decision, written by a great jurist

and respected member of this Court, but we respectfully disagree with his conclusion.

My colleague assigned to write the principal decision in this case suggests that overruling *Makarenko* "in no way articulates a new principle of law". I am certain he does not, nor do we, intend to announce any innovations in the doctrine of *stare decisis*. *Makarenko,* of course, has been the law from its decision until the decision in this case. There were many ancient principles of law discussed in the majority opinion of *Makarenko*. Some of these cases remain the ruling case law of the State. We would not as my colleague states, "expressly overrule its holding in its entirety", but we would overrule *Makarenko v. Scott, supra,* to the extent that it is inconsistent with this concurring opinion.

Judges Berry, Caplan and Haden authorize me to state that they join me in this concurring opinion.